In the Matter of the CORPORATION COUNSEL OF THE CITY OF NEW YORK, Respondent, against JAMES E. SMITH et al., Appellants.

First Department, November 7, 1955.

*James B. Kilsheimer, III,* of counsel (*Kaplan, Kilsheimer & Buckley,* attorneys), for Henry Bentele, appellant.

*Rachel B. Backer* for James E. Smith and others, appellants.

*Saul S. Nevins* of counsel (*Levy & Nevins,* attorneys), for Sidney S. Deutsch and another, appellants.

*Bruce McM. Wright* of counsel (*Weaver, Waters, Evans & Wright,* attorneys), for Norman W. Robinson, appellant.

*Paul F. Diggins, Jr.,* for Bernard McGrane, appellant.

*Robert E. Hugh* of counsel (*Seymour B. Quel* with him on the brief; *Peter Campbell Brown, Corporation Counsel,* attorney), for respondent.

BREITEL, J. Involved in this case is the question whether an open commission may be granted to take the testimony of a nonresident witness for use in disciplinary proceedings affecting employees of the tax commission of the City of New York. Special Term allowed the commission, and the city employees who are the subjects of the disciplinary proceedings, appeal, contending that the court was without power to grant the application.

The allowance of the open commission should be sustained.

Five years ago the commissioner of investigation of the City of New York began an inquiry concerning bribery in the procuring of low real estate assessments. A widespread investigation by the District Attorney ensued, but no indictments were returned by the grand jury because of the " untimely " deaths of a number of witnesses. Thereafter, disciplinary proceedings were started against some twelve tax assessors, employees of the city tax commission.

A key witness in these proceedings is one Blumberg, one of those who purportedly had paid moneys to the city tax commission employees, and who now resides in Florida. Before that he had been a resident of New York, and had testified at length before the grand jury. It is the testimony of Blumberg that is sought upon the open commission, for he has refused to come to New York.

In disciplinary proceedings the proof is not limited to common-law evidence. (Civil Service Law, § 22, subd. 2.) Nevertheless, there must be some competent evidence to support a final determination resulting in disciplinary action. (*Matter of Reynolds* v. *Triborough Bridge & Tunnel Auth.,* 276 App. Div. 388.) While, therefore, the tax commission's determination is not limited generally to evidence adduced from witnesses subject

to cross-examination, the necessity and materiality of obtaining the testimony of Blumberg — in adversary form — is suggested and is, indeed, good administrative practice. In any event, the city employees, in opposing the open commission, do not dispute the materiality or necessity of the deposition.

Difficulty arises from the fact that the procedural provisions dealing with depositions are contained in the Civil Practice Act. These provisions, on their face, are limited to judicial actions and special proceedings. (See Civ. Prac. Act, §§ 288, 308.) Disciplinary proceedings are neither. However, the statutory framework makes it quite clear that in disciplinary proceedings, as well as in other administrative proceedings, the procedural sections of the Civil Practice Act, otherwise generally applicable to judicial proceedings, may be available to afford remedies to hearing bodies and officers. This may result by implication or by express incorporation by reference in the administrative statute of civil practice provisions applicable to judicial proceedings.

Thus, subdivision 4 of section 6 of the Civil Service Law with reference to the State Civil Service Commission provides that it shall: " Have power to subpœna and require the attendance in this state of witnesses and the production thereby of books and papers pertinent to the investigation and inquiries hereby authorized and to examine them and such public records as it shall require in relation to any matter which it is required to investigate, and for the purposes of the examination hereby directed, the commission possesses all the powers conferred by the legislative law upon a committee of the legislature or by the civil practice act, upon a board or committee, and said commission and any officer or employee previously designated in writing by the commission to act in its behalf, *may invoke the power of any court of record in the state to compel the attendance and testifying of witnesses and the production of books and papers.*" (Emphasis supplied.) There are other parallel statutes of similar import.

Some of the parallel statutes merely confer upon the administrative agency the power to issue subpœnas, and, in rather general terms, provide for their enforcement.[1] Others, in addition to conferring power to issue subpœnas, expressly relate the enforcement of process for the taking of testimony to the provisions of law for the enforcement of similar process in civil

1. See, e.g., Correction Law, §§ 45, 261; Pari-Mutuel Revenue Law, L. 1940, ch. 254, § 47, as amd. by L. 1954, chs. 5, 510; Education Law, § 313, subd. 5, par. (g); State Finance Law, § 172, and Executive Law, § 378, subd. 1.

proceedings.[2] Many of these statutes make specific reference to the taking of depositions. But even more interesting is the significant number of statutes conferring on administrative agencies the power not only to issue subpœnas but to take depositions.[3] And a number of these provide explicitly for the taking of depositions outside the State.[4] A reading of any of these statutes suggests, however, that they are not self-contained, and whether they incorporate them by reference or not, the applicable civil practice provisions are imported.

Section 406 of the Civil Practice Act is the most general statute. It contains extensive provision for the issuance of subpœnas, the taking of depositions and the production of books and papers in administrative proceedings. The statute is basically one of implementation and is concerned primarily with enforcement of process. Expressly it does not confer power to issue or enforce process for taking depositions beyond the State, but, on the other hand, there are no exclusionary words. Interestingly enough, however, it provides for the enforcement of commissions and the taking of depositions for use outside the State.

When we turn to the sections of the Civil Practice Act covering the taking of depositions outside the State (Civ. Prac. Act, §§ 288, 308; see, also, Rules Civ. Prac., rules 126–131), the pattern is quite clear that such commissions and depositions are procedural substitutes for the taking of testimony within the State, made necessary by the absence of the witness from the State. They are integrated with the subpœna power. The purpose behind provisions for commissions is the same as that for subpœnas, namely, to aid in the eliciting of the true facts.

Critical in this analysis is the requirement under section 22 of the Civil Service Law that employees who have veteran status or who are in the competitive class may not be removed except upon charges and after a hearing. The statute expressly provides for the attendance of witnesses and entitles the employee to obtain a summoning of witnesses on his behalf. The disciplinary proceedings involved in this case are pursuant to

2. See, e.g., Alcoholic Beverage Control Law, § 17, subd. 10; Banking Law, § 38; Public Service Law, § 19; Conservation Law, § 401, and Labor Law, § 220, subd. 7; § 753, subd. 2.

3. See, e.g., Public Service Law, § 19; Conservation Law, § 401; Vehicle and Traffic Law, § 7, subd. 6; Agriculture and Markets Law, § 22, and Real Property Law, § 442-e, subd. 6. Cf. Military Law, § 130.49.

4. Labor Law, § 39; Agriculture and Markets Law, § 22. Cf. Military Law, § 130.49.

that section and it is under that section that these employees are entitled to a hearing.

There was a time when it was doubted whether, in the absence of a specific enabling statute, the administrative agency in a disciplinary proceeding could obtain the presence of witnesses to testify against an employee by the issuance of process. That question was settled, at least in this department, by *Matter of Reynolds* v. *Triborough Bridge & Tunnel Auth.* (276 App. Div. 388, *supra*), in which the late Mr. Justice SHIENTAG wrote on behalf of this court. It was there held that section 406 of the Civil Practice Act conferred power on the administrative agency to obtain the attendance of witnesses. Attention was pointedly called to the fact that this eliminated the need for testimony of doubtful weight and competence. The court went on to observe that while the Public Authorities Law did not confer power to issue subpœnas upon the Triborough Bridge & Tunnel Authority, such a general grant was not necessary " in view of the provisions of the Civil Practice Act and section 22 of the Civil Service Law " (p. 392). It was said further: " The power to try a veteran on charges carries with it the implied power to hear the case on competent evidence and, if necessary, to get the aid of a court of law in procuring the attendance of necessary witnesses " (p. 392).

This court, in the *Triborough Bridge* case, read the statutes — the civil service and practice statutes — together as a pattern. It also emphasized the need for the remedy in order to deprive the administrative agency of the excuse that it had to proceed upon less than competent and adversary-tested proof. Those principles apply with even greater significance to this case where the charges are so serious and the tax commission has in its hands, with leave of the Court of General Sessions, the ex parte grand jury testimony of the prospective witness Blumberg.

While it is true that the *Triborough Bridge* case determines only that subpœnas may issue within the State, the method of statutory analysis and the same principles of liberal interpretation are applicable here. The taking of proof outside the State, as suggested earlier, is no more than a necessary procedural substitute for the taking of proof within the State, which is authorized.

The larger issue here then becomes whether or not statutory provisions in this context are to receive an interpretation which will effect their objectives, rather than to narrow their scope by a strained adherence to the literal wording of each particular statute. These statutes, drawn at different times, yield no uni-

form pattern. Some statutes expressly embody by reference Civil Practice Act provisions covering the compulsion of testimony. Others purport to set up their own enforcement provisions, but they are obviously designed to parallel and conform to the more detailed provisions found in the Civil Practice Act. Still others make the broadest incorporations by reference of the statutes that will permit the courts to assist the administrative agency in procuring testimony.

It is no answer to point out that the Legislature could have used explicit language. The same argument could have been made in the *Triborough Bridge* case. That is hardly ever an answer in statutory interpretation, except after a conclusion has been reached. The statutes that have expressly conferred on agencies the right to obtain open commissions happened to have occurred in fields where the problem was confronted at the threshold. But it is evident that it was not intended to differentiate in such multiple fashion among agencies upon which it was intended to confer power to obtain testimony. Where legislation deals with subjects in the judicial field or substantially touches on the judicial experience, it becomes a judicial duty, and not an unwarranted license, to make effective such legislation and implement it with the breadth and dynamics of liberal interpretation. A contrary approach not only clutters the statute books, but desiccates the spirit and purpose of salutary legislation. (Cf. *Matter of Gilchrist* [*Dahl*], 130 Misc. 456, 463–466.)

In the same vein, it is not reasonable to segment our practice statutes. Of course, they are cast in a judicial framework, for that was their origin. But section 22 of the Civil Service Law requires hearings. Hearings require witnesses. Section 406 of the Civil Practice Act sets up the means for eliciting the testimony of such witnesses. It does so by incorporating procedure and statutes appropriate for the compulsion of attendance and for the taking of testimony of witnesses. It does so designedly. When the witness is not present in the State the design for conforming administrative with judicial practice should not be abruptly frustrated, but should be applied to cover the normal substitutes for procuring the testimony of absent witnesses. Of course, one can read the statutes literally and require that the Legislature amend each practice provision to apply in each analogous case to an administrative disciplinary proceeding. That had not been a requirement in the past. It was not a requirement in the *Triborough Bridge* case. It should not be a requirement now.

Moreover, the need for taking the deposition of a witness outside the State in a disciplinary proceeding can cut both ways. Suppose that Blumberg, instead of being a witness to corroborate the charges against the city employees, were, on the contrary, a reluctant nonresident witness who could exculpate them. It would be unjust indeed, and suggest an impotency in the courts which we would not accept, if his testimony by deposition outside the State were not available, merely because the statute — which expressly provides that the employee shall have the right to summon witnesses — does not go on to say that he can obtain an open commission.

This does not mean that an open commission should be granted in every case. It will remain, as it does in a purely judicial proceeding, a matter of discretion. Indeed, it should be rarely granted, and conditions may be imposed to make certain that the person proceeded against in the disciplinary proceeding is not unnecessarily exposed to testimony given at a distance and with great expense to him.

But in this case, there is every warrant for exercising the court's discretion in favor of granting the open commission. The charges are very serious — they are based on bribery. Witnesses have been lost by " untimely " death. The testimony of the absent witness is actually available to the tax commission, but in ex parte form. An important arm of government exercising tremendous power over the activities of its citizens is involved.

Accordingly, the order granting the open commission should be sustained, except that, in the exercise of discretion, it should be modified to provide for the reimbursement by the city to the employees of out-of-pocket expense entailed, other than counsel fees, in having counsel present, if desired, in the taking of the deposition of the witness Blumberg.

Bastow, Botein and Cox, JJ., concur; Peck, P. J., dissents and votes to reverse and deny the motion.

Order modified so as to provide for the reimbursement by the city to the employees of out-of-pocket expense entailed, other than counsel fees, in having counsel present, if desired, in the taking of the deposition of the witness Blumberg and, as so modified, affirmed. Settle order on notice.