In the Matter of ABE KLEIN, Appellant. SAMUEL A. LARNER, Respondent.

Argued October 12, 1955; decided January 12, 1956.

*Solomon Roshevsky* for appellant. I. Absent strict statutory compliance, Special Term lacked jurisdiction to issue the subpœna duces tecum and the order directing appellant to be examined as a witness. (*Matter of Bernhard* v. *Lefcourt,* 233 App. Div. 609; *Matter of Isaacs,* 148 App. Div. 157; *Matter of Jacobs* v. *Steinbrink,* 242 App. Div. 197; *Matter of Mitchel* v. *Cropsey,* 177 App. Div. 663; *Matter of Wellhofer,* 18 N. J. Super. 197, 10 N. J. 321; *Tiene* v. *Jersey City,* 13 N. J. 478; *Matter of Richardson,* 247 N. Y. 401; *Massett Bldg. Co.* v. *Bennett,* 4 N. J. 53; *North Bergen* v. *Gough,* 107 N. J. L. 424; *Prentis* v. *Atlantic Coast Line,* 211 U. S. 210; *Matter of Hecht* v. *Monaghan,* 307 N. Y. 461.) II. A jurisdictional objection, as in the case at bar, is never waived. (*Kamp* v. *Kamp,* 59 N. Y. 212; *Cameron Estates* v. *Deering,* 308 N. Y. 24; *Matter of Doca* v. *Federal Stevedoring Co.,* 308 N. Y. 44.)

*Bertram H. Siegeltuch* and *Walter M. Weisberg* for respondent. I. The issuance of the original subpœna and of the order directing the appearance of appellant was clearly within the purview of article 30 of the Civil Practice Act. (*Matter of Davies,* 168 N. Y. 89.) II. The New Jersey proceedings in which the examination is sought are special judicial proceedings within the meaning and intent of section 310. (*Massett Bldg. Co.* v. *Bennett,* 4 N. J. 53; *Tiene* v. *Jersey City,* 13 N. J. 478; *Matter of Wellhofer,* 18 N. J. Super. 197, 10 N. J. 321; *Matter of Richardson,* 247 N. Y. 401; *Matter of Tiene,* 33 N. J. Super. 429.) III. Every interest of public policy and comity dictates an affirmance of the order below.

CONWAY, Ch. J. The material facts are not in dispute. Appellant, through his company the Hudson City Contracting Company, Inc., contracted to remove garbage from Jersey City, New Jersey. Pursuant to that agreement the company removed garbage from January 1, 1953, through February 15, 1953, when

the contract was adjudged to be null and void by a judgment of the Superior Court of New Jersey (see *Scatuorchio* v. *Jersey City Incinerator Auth.,* 14 N. J. 72 [1953]).

On January 28, 1953, a petition was filed by forty-nine freeholders of the City of Jersey City requesting an investigation into the financial affairs of that municipality, including alleged corruption in the awarding of the garbage removal contract to the appellant's company. The Superior Court of New Jersey, pursuant to the statute authorizing that petition (Rev. Stat. of N. J., § 40: 6–1 *et seq.*), appointed an attorney, the respondent herein, as " Expert " to take the testimony concerning the alleged municipal corruption. Since appellant is a resident of the State of New York, respondent made application to and was appointed by the Superior Court of New Jersey " *   *   *   to appear before such court or courts of the State of New York and there, in accordance with the rules of practice in the courts of the State of New York, to apply for the issuance of subpœnæ commanding the appearance of Abe Klein   *   *   *   before him and to take the testimony of Abe Klein   *   *   *   in matters relevant to the subject inquiry or matters reasonably calculated to lead to the discovery of relevant evidence ". Accordingly respondent Larner came into New York and in January, 1954, applied to the Supreme Court for a subpœna duces tecum directing the appellant Klein to appear and to bring with him all his books, records and other data " pertaining to the submission of bids to the City of Jersey City or to the Jersey City Incinerator Authority for garbage contract removal by the Municipal Contracting Company and the Hudson City Contracting Co. *   *   *   ." The subpœna was issued on January 29, 1954, and was personally served upon the appellant. He failed to appear on the date specified. Thereafter, on February 16, 1954, appellant moved in the Supreme Court for an order striking out, vacating and quashing the subpœna. That motion was denied. The Appellate Division affirmed unanimously and we dismissed a motion for leave to appeal. We also dismissed an appeal taken as of right, on the ground that the order did not finally determine the special proceeding (*Matter of Klein [Larner]*, 307 N. Y. 909 [1954]).

Following the denial of appellant's motion to quash and vacate the subpœna duces tecum, the respondent Larner sought and

obtained an order requiring the appellant to show cause why he should not appear to testify and be directed to bring his books and records with him. Compliance with that order was stayed pending an appeal to the Appellate Division from the order denying the motion to quash the subpœna. Thereafter an order was made directing appellant to appear for examination and to bring with him the above-mentioned books and records. From that order Klein appealed to the Appellate Division, which unanimously affirmed it.

From that affirmance the appellant Klein has appealed by our permission and has brought up for review the prior affirmance of the order denying the motion to vacate and quash the subpœna duces tecum (Civ. Prac. Act, § 580).

The issue involves the interpretation and applicability of section 310 of the Civil Practice Act, which reads as follows: *" In what cases depositions may be taken.* A party to an action, suit or special proceeding, civil or criminal, pending in a court without the state, either in the United States or in a foreign country, may obtain, by the special proceeding prescribed in this article, the testimony of a witness, and, in connection therewith, the production of books and papers, within the state, to be used in the action, suit or special proceeding."

However much we may desire to assist a sister State, our courts may not go beyond the statutory powers granted by our Legislature. Since this is a matter of procedural law, it is necessary to examine the statutes and decisions of New York — the forum — rather than those of New Jersey (see 3 Beale on Conflict of Laws, p. 1600, § 584.1, pp. 1604–1605; §§ 589.1, 590.1). The applicability of the quoted statute in matters arising before the courts of New Jersey has already been considered in New York. In *Matter of Isaacs* (148 App. Div. 157 [1911]), a New Jersey master in chancery obtained a subpœna duces tecum requiring the examination in New York of a resident of our State with regard to litigation then pending in New Jersey. It did not appear in the papers on the motion for the subpœna that any issues had yet been raised in the New Jersey controversy. Accordingly, the Appellate Division set aside the service of the subpœna duces tecum, writing that: " The question we have to deal with now relates to the law and practice of our own State and not to those of New Jersey. Under our rules issue must

be joined before a subpœna can be directed in a case like the present, and the evidence sought must be relevant to such issue. That condition was not shown to exist in the present case '' (148 App. Div. 158–159).

Not only is the interpretation and applicability of section 310 governed and determined by examination of the statutes and authorities in our State, but our courts have held that the party seeking a subpœna pursuant to the statute must comply with and fulfill strictly its requirements and conditions. That was succinctly stated by the Appellate Division, together with the reason therefor, in *Matter of Bernhard* v. *Lefcourt* (233 App. Div. 609, 610 [1931]) as follows:

'' In order to protect the citizens of this State it has been held that the moving papers must show that the application is made in good faith and to promote the ends of justice. The making of the application is not sufficient. It must appear that the purpose is proper, that an action is pending and that issues are involved.

'' The court had no power to issue a subpœna requiring the attendance of a person before a commissioner or other official to testify in an action pending in a foreign State unless there was a compliance with the statutes permitting such examination.'' (Cf. *Matter of Interocean Mercantile Corp.* [*Hoops*], 204 App. Div. 284, affd. 236 N. Y. 587.)

Appellant argues that the subpœna duces tecum should never have been issued in the present case for the reason that the New Jersey investigation for which his testimony is sought is not an '' action, suit or special proceeding '' within the meaning of section 310 of the Civil Practice Act. Before examining the statutes pursuant to which the investigation was commenced, it will be helpful to note the meaning given to the terms used in section 310 by our statutes and decisions.

In New York '' There is only one form of civil action. The distinction between actions at law and suits in equity, and the forms of those actions and suits, have been abolished '' (Civ. Prac. Act, § 8). Our statutes further provide that '' The word ' action,' when applied to judicial proceedings, signifies an ordinary prosecution in a court of justice *by a party against another party* for the *enforcement* or *protection* of a right, the *redress or prevention* of a wrong or the punishment of a public offense '' (Civ. Prac. Act, § 4; emphasis supplied). We define

the term " special proceeding " as " Every other prosecution by a party for either of the purposes specified in the last section * * *." (Civ. Prac. Act, § 5.)

Turning now to the present case, the New Jersey statutes (Rev. Stat. of N. J., § 40:6–1 *et seq.*) provide that if twenty-five or more qualified freeholders of the political subdivision involved swear to and subscribe to a petition setting forth " that they have cause to believe that the moneys of such municipality or county are being, or have been, unlawfully or corruptly expended * * * ", then " [a] judge of the superior court may, in his discretion, make a summary investigation into the affairs of " such municipality (§ 40:6–1). During any such " summary investigation ", the Judge is given the authority to exercise the subpoena powers of the Superior Court, and to take or order the taking of testimony and evidence " in similar manner as in civil actions generally " (§ 40:6–3).

It is noteworthy at the very outset to observe that the New Jersey Legislature deemed it necessary to authorize, specifically and expressly, the issuance of subpoenæ and the taking of testimony " in similar manner as in civil actions generally ". Such a provision would be unnecessary if the New Jersey proceeding were a normal and customary judicial proceeding. Indeed, it has been said that the power to compel the attendance of witnesses is an inherent power of a court of justice in adjudging the matters before it (58 Am. Jur., Witnesses, § 9, p. 27, and cases cited). It should be noted in this respect that section 4 of the General Municipal Law of New York, to be discussed later, which authorizes a procedure very similar to the one in New Jersey herein, does *not* expressly authorize the issuance of such subpoenæ or the taking of testimony or impose a liability for perjury. Those powers unquestionably exist and are presumed not to require express authorization in the statute.

In *Matter of Hecht* v. *Monaghan* (307 N. Y. 461, 469 [1954]), apropos of the activities of administrative bodies, we quoted with approval the language of the Supreme Court of the United States in *Prentis* v. *Atlantic Coast Line Co.* (211 U. S. 210, 226 [1908]) on the method of ascertaining the nature of a proceeding not strictly judicial. That quotation was that " A judicial inquiry investigates, *declares and enforces* liabilities as they stand on present or past facts and under laws supposed already to exist.

That is its purpose and end '' (emphasis supplied). That is in accord with the Civil Practice Act (§§ 4, 5). The important criteria are (1) the presence of parties, (2) the trial and determination of issues, and (3) a final order or judgment of rights, duties or liabilities.

The New Jersey statute, however, does not provide for any determination of issues, or for any final judgment or order — despite the care with which the subpœna and hearing powers of the New Jersey Judge are set forth. Rather the New Jersey law states only that '' The judge may, in his discretion, appoint experts to prosecute such investigations, and *may* cause the results thereof to be published in such manner as he may deem proper '' (Rev. Stat. of N. J., § 40:6–2; emphasis supplied). No mention is made of any adjudication of rights or liabilities. No mention is made of any course of judicial action which is expected to follow such investigations, as, for example, an indictment which is usually expected to ensue after a Grand Jury investigation. It is not necessary that the Judge conducting the investigation take any action of any kind, for the statute merely says that he '' *may* cause the results thereof to be published in such manner as he may deem proper '' (§ 40:6–2). In the counterpart New York statute (General Municipal Law, § 4) not only does the above language appear, as it does in the New Jersey law, but in the very next paragraph of our statute it is provided that: '' The costs incurred in such investigation *shall be taxed* by the justice, and paid, upon his order, by the officers whose expenditures are investigated, if the facts in such affidavit be substantially proved, and otherwise, by the freeholders making such affidavit. If such justice shall be satisfied that any of the moneys of such town or village are being unlawfully or corruptly expended, or are being appropriated for purposes to which they are not properly applicable, or are improvidently squandered or wasted, *he shall forthwith grant* an order restraining such unlawful or corrupt expenditure, or such other improper use of such moneys.'' (Emphasis supplied.) The emphasized portions of that paragraph are not permissive, but mandatory. Thus, in New York, the proceeding is not merely '' to investigate as widely and as thoroughly as possible into the transactions * * * concerned * * * with the ultimate view of determining whether there was any wrongdoing

or illegality * * *." (See *Matter of Tiene,* 19 N. J. 149 [1955].) In New York both the imposition of costs as well as the injunctive order are mandatory if the facts alleged in the petition be established. In New Jersey, on the other hand, there is no *requirement* that costs be paid by the petitioners in the event they fail to establish their allegations, or by the officers investigated if the charges be proved. Rather the New Jersey law reads as follows (Rev. Stat. of N. J., § 40:6–2):

" The judge *may,* if he deems it advisable, require the applicants to furnish a bond to be filed with the county clerk in such sum as he may deem necessary for the payment of the costs and expenditures of the investigation.

" The cost incurred in the investigation shall be taxed by the judge, and upon his order be *paid by* the disbursing officers of the *county or municipality* whose expenditures may have been investigated." (Emphasis supplied.)

On its face, the New Jersey proceeding fails to meet the requirements of our concept of a judicial " action " or " special proceeding ", and as we have indicated previously herein (pp. 478–479, *supra*), it is our definition of terms which is determinative. Under the New Jersey statute there are no parties as such, there is no trial of any issue, there is no adjudication of rights or liabilities, there is no power to issue an injunction.

This conclusion as to the nature of the New Jersey investigation is in harmony with the decisions of the highest court of that State. In the first case of importance on this subject (*Massett Bldg. Co.* v. *Bennett,* 4 N. J. 53 [1950]), the plaintiffs sought to restrain the conduct of experts who were making an investigation pursuant to the statutes involved in the instant case. Those plaintiffs argued that these statutes impose upon a judge the performance of nonjudicial duties in violation of article III of the New Jersey Constitution of 1947, which provided for the distribution of powers among the three branches of government. The court, however, pointed out (p. 57) that the doctrine of separation of powers " has nowhere been construed as creating three mutually exclusive water-tight compartments ", with the implication that there may be an overlapping of powers and functions among the three branches of government in some cases. The court then proceeded to distinguish between the New Jersey law (Rev. Stat. of N. J., § 40:6–1 *et seq.*) and a similar statute

in New York which had been involved in *Matter of Richardson* (247 N. Y. 401), (i.e., Public Officers Law, § 34, as amd. by L. 1928, ch. 15).

In the *Richardson* case (*supra*) we had said (Cardozo, Ch. J.) : " We think there has been an attempt by section 34 of the Public Officers Law, both in its original and in its amended form, to charge a justice of the Supreme Court with the mandatory performance of duties non-judicial. He is made the delegate of the Governor in aid of an executive act, the removal of a public officer (*Matter of Guden,* 171 N. Y. 529). At the word of command he is to give over the work of judging, and set himself to other work, the work of probing and advising. His findings when made will have none of the authority of a judgment. To borrow Bacon's phrase, they will not ' give the rule or sentence.' They will not be preliminary or ancillary to any rule or sentence to be pronounced by the judiciary in any of its branches. * * * From the beginnings of our history, the principle has been enforced that there is no inherent power in the Executive or Legislature to charge the judiciary with administrative functions except when reasonably incidental to the fulfillment of judicial duties (*People* v. *Hall,* 169 N. Y. 184; *Matter of State Indust. Comm.,* 224 N. Y. 13, 16).'' (247 N. Y. 410.)

In distinguishing the *Richardson* case (*supra*), the New Jersey Supreme Court said (4 N. J. 58–59) :

" There the statute cast a mandatory duty on the justice; here the judge ' may ' act ' in his discretion.' There the justice acted under an order from the governor directing him to investigate, and he was required to report to the governor; here, if he does see fit to act, he does not report to anyone. He ' may cause the results of such investigation to be published in such manner as he may deem proper,' *R.S.* 40:6–1. There the proceedings were directed to the definite end of an executive removal of a local officer; here the statute had no such definite goal. The most that may happen at the end of the investigation, as such, is publication of the results. There the judicial action infringed on a specific constitutional prohibition; here *it is still to be demonstrated that an investigation into the affairs of local government is not judicial.*

" * * * *It cannot be said* an investigation into the public affairs of a municipality or a county is *not judicial* in nature when

it may lead to a civil suit for damages, or a proceeding in lieu of a prerogative writ, or a grand jury indictment or any one of a variety of statutory actions. That the statute stops short with a publication of the results thereof does not prevent the action being judicial in character, for it may lead to subsequent judicial action " (emphasis supplied).

Further on in that opinion, the court took note of the fact that under the Revised Statutes of New Jersey judges are called upon to perform a number of nonjudicial functions, such as making appointments of county park commissioners, morgue keepers, water commissioners, etc., serving " *on boards or commissions in a nonjudicial capacity* ", granting licenses, and what the Chief Justice denominated " *a heterogeneous group of nonjudicial responsibilities* ". (P. 60.) Nowhere in that opinion, however, does the court state that the investigation is judicial in nature; rather the opinion is couched in negative terms. Thus it is said that " it is still to be demonstrated that an investigation into the affairs of local government is not judicial." " It cannot be said an investigation * * * is not judicial in nature ", " That the statute stops short with a publication * * * does not prevent the action being judicial in nature." That phraseology, coupled with the lengthy discussion of the admittedly nonjudicial duties and functions given to the New Jersey courts and the tendency of the New Jersey Legislature to delegate some of its investigative powers to the courts, seems to point clearly to the nonjudicial nature of the subject investigation.

The next important case was *Matter of Wellhofer* (10 N. J. 321 [1952]). There the Supreme Court of New Jersey — by a unanimous court — affirmed a decision of the Superior Court of that State. In its *Per Curiam* opinion, the Supreme Court expressly reserved decision on the question of the power of a judge conducting an investigation under section 40:6-1 *et seq.* of the Revised Statutes of New Jersey to do more than make findings of fact and publish them. The Supreme Court did not, however, reverse the negative conclusion reached by the Superior Court on that issue, and the Supreme Court agreed in all other respects with the Superior Court. In its opinion that latter court had written that " The proceeding authorized by this statute does not constitute an ' action ' as that word is generally defined " (18 N. J. Super. 197 [1952]). The definition alluded

to is almost identical with that given in section 4 of our Civil Practice Act (see p. 479, *supra*). The Superior Court then wrote that a proceeding under section 40:6–1 *et seq.* of the Revised Statutes of New Jersey, " * * * results in no decision as to guilt or innocence, or as to any right of person or property. The statute merely provides a *quasi*-judicial [*sic*] method of ascertaining and, if the judicial officer should so determine, of publishing the facts of a very particular and vital phase of governmental activity " (18 N. J. Super. 202).

In *Tiene* v. *Jersey City* (13 N. J. 478 [1953]), the Supreme Court of New Jersey considered the very investigation for which Klein's testimony has been sought. In its opinion the Supreme Court quoted approvingly from *Massett Bldg. Co.* v. *Bennett* (4 N. J. 53, *supra*). The court also said (p. 489): " The purpose of the statute was discussed in *North Bergen* v. *Gough,* 107 N. J. L. 424, 427 (*Sup. Ct.* 1931): ' The Legislature clearly meant this statute to be the channel whereby a minority, having reason to suspect the unlawful or corrupt use of the moneys of the municipality, may present their apprehensions to a justice of the Supreme Court, whereupon that high judicial officer shall make an investigation, and thereupon, if he be satisfied of the propriety of so doing, may at his discretion appoint others, experts, to prosecute the investigation. There was thus set up a *quasi* judicial method, not of charging an offense or causing trial thereof, but of ascertaining and, if so the judicial officer should determine, of publishing the facts of a very particular and vital phase of governmental activity * * * ' ' "

In the most recent opinion of the Supreme Court of New Jersey as to the same investigation (*Matter of Tiene,* 19 N. J. 149 [1955], *supra*) it was said: " * * * in this statutory proceeding the expert is not restricted to any issues formulated by a set of pleadings or set forth in a pretrial order. The very purpose of his appointment is to investigate as widely and as thoroughly as possible into the transactions in which the financial affairs of the City of Jersey City were concerned. It is his duty to pursue his inquiry with the ultimate view of determining whether there was any wrongdoing or illegality in this regard limited only by the general scope of his appointment ".

The cases thus bear out the conclusion previously reached (*supra,* p. 482) from an examination of the statutes: an investigation pursuant to section 40:6–1 *et seq.* of the Revised Statutes of New Jersey does not contemplate or involve the formulation and trial of issues, it does not constitute an adversary proceeding, it does not result in a final order or judgment adjudicating the rights and liabilities of parties. It is not, therefore, a judicial " action, suit or special proceeding " within the meaning and intent of section 310 of our Civil Practice Act. Instead this investigation is a proceeding whose very purpose is a broad and all-inclusive inquiry into municipal government looking to the publication of facts as such. Even that final result, however, is not mandatory, but rests in the discretion of the court. Such a proceeding does not fall within the definition of " action, suit or special proceeding " as those terms are used in our statutes. That being so, there was no authority for the issuance of the subpœna duces tecum, or for the subsequent order directing the examination of the appellant.

The order appealed from should be reversed, with costs in all courts, the order directing appellant to appear for examination vacated, and the motion to vacate the subpœna duces tecum should be granted.

DESMOND, J. (dissenting). This simple procedural statute should be " liberally construed " as the Civil Practice Act itself commands (§§ 2, 3). No public policy requires that this law be so straitly limited in its coverage as to deprive it of its useful function of facilitating the taking of testimony in this State for use in judicial proceedings pending elsewhere (see *Matter of Roberts,* 214 App. Div. 271, 275). It was our own Legislature, not some foreign body, which, so long ago as 1867 (see L. 1867, ch. 68, and, even earlier, Rev. Stat. of N. Y., pt. III, ch. VII, tit. III, art. IV, and *Eldridge* v. *Chapman,* 13 Abb. Prac. 68, n.), provided, without qualification or exception, that a party to an action, suit or special proceeding, civil or criminal, pending in a court without the state, either in the United States or in a foreign country might thus obtain testimony in this State. Such inclusive and sweeping language as " action, suit, or special proceeding, civil or criminal " must have been intended to cover any and every kind of foreign judicial proceeding, whatever its name or special features. Our sole inquiry is, therefore, as to

whether the proceedings pending in the Superior Court of New Jersey under chapter 6 of title 40 of the Revised Statutes of New Jersey are judicial. Surely, for that we can take New Jersey's answer, and that answer is in the affirmative (*Massett Bldg. Co.* v. *Bennett*, 4 N. J. 53; *Matter of Wellhofer*, 10 N. J. 321; *Tiene* v. *Jersey City*, 13 N. J. 478; *Matter of Tiene*, 19 N. J. 149). Confirmation thereof is available from the fact that our own State has, under section 4 of the General Municipal Law, an investigative procedure, "unmistakably judicial" (see *Matter of Richardson*, 247 N. Y. 401, 412, 413), which is generally similar to the New Jersey procedures we are here examining.

The order should be affirmed, with costs.

FROESSEL, VAN VOORHIS and BURKE, JJ., concur with CONWAY, Ch. J.; DESMOND, J., dissents in an opinion in which FULD, J., concurs; DYE, J., taking no part.

Order reversed, with costs in all courts, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.