Matthew M. Levy, J.
This is a proceeding by a former patrolman, brought under article 78 of the Civil Practice Act, to review the determination of the respondent, the police commissioner of the City of New York, in refusing to approve petitioner’s application for reinstatement in the police department and for an order directing the respondent to certify that the petitioner’s services, conduct and character prior to his resignation were satisfactory, and further that the petitioner be reinstated as a patrolman.
The petitioner became a patrolman in July, 1938. He has had many years of active service in the police department, during which time he apprehended, arrested and participated in the *443 conviction of many criminals, and received two commendations for outstanding police action. He alleges that he voluntarily resigned on March 5, 1954, for the reason that it was necessary for him to undertake the operation of a family business in support of his recently widowed mother. On February 23, 1955, within one year of His resignation (N. Y. City Civ. Serv. Comm. Bules, rule V, § XI, subd. 1), the petitioner applied to the police commissioner for reinstatement, but the commissioner refused the request and notified the petitioner of that refusal on February 25, 1955.
The commissioner, in response, alleges that that is by no means the complete record, and asserts that: On April 30, 1953. in the county of Richmond, the petitioner was, with other police officers, indicted for conspiring to aid certain persons in conducting an unlawful business (book-making), to protect such persons from arrest and prosecution, to take bribes and to give false testimony in court. The acts of which the petitioner was accused were stated in the indictment to have taken place while the petitioner was a plainclothesman assigned to Richmond. On the same day that the Grand Jury filed the indictment, April 30, 1953, the petitioner was suspended from the police force by order of the commissioner to await trial for the crimes set forth in the indictment. Departmental charges were preferred against the petitioner on June 19, 1953. The trial of the conspiracy indictment was commenced in February, 1954, and it was during the trial of the petitioner on the conspiracy charge, on March 5,1954, that he resigned from the police department. The criminal charges against the petitioner were thereupon dismissed, but the departmental disciplinary charges remained pending. On March 8, 1954, the resignation was disapproved by the police commissioner, who ordered the petitioner dropped from the rolls of the department for having resigned without permission of the commissioner while disciplinary charges were pending against the petitioner (Administrative Code of City of New York, § 434a-23.0). Thus it was that the petitioner was ineligible for reinstatement, as he had not ‘ ‘ been separated from the City service for any cause other than fault or delinquency on his part ” (N. Y. City Civ. Serv. Comm. Rules, rule V, § XI, subd. 1).
In reply, the petitioner unfolds the following tale, alleged by him under oath: In January, 1950, the petitioner was assigned to the police department special squad on Staten Island (Richmond), after having had but three months’ experience in plainclothes, and was designated a junior member of the squad. The State investigation of gambling and corruption in Staten Island *444 covered the period from January to September, 1950. The “ petitioner denies absolutely and unequivocally the truth of the charges, specifications and allegations contained in the indictment handed down with respect to him, and in the Police Department’s Charge and Specifications ” against him. “ That petitioner had decided to fight these charges of dishonesty and corruption to the end in spite of the length of the proceedings and investigation which at the time of the trial ran to upwards of two years, resulting in some twenty subpoenas being issued against him, and in spite of the death of his father, with the subsequent demands by his mother that he render necessary assistance in the conduct of the family business ”. In view of the petitioner’s limited time with the Staten Island squad, his lack of experience as a plainclothesman, and of his resulting junior status, “ and because of the complete lack of incriminating evidence against him ”, various city and State officials had approached the petitioner, from the beginning of the criminal trial and for three weeks thereafter, for the purpose of having the charges dropped against the petitioner, with the least embarrassment to these public officials. In consequence, and because of the pressure of his mother’s demands, and upon assurance — ‘ ‘ with the obvious approval of the respondent [Police] Commissioner ” — that all charges would be dropped, the petitioner agreed to submit his resignation to the police department. An inspector of the department (who was the complainant in the departmental disciplinary proceedings against the petitioner) was present at the trial as the commissioner’s personal representative and participated in the discussions leading to the petitioner’s resignation as a patrolman. At all times, the petitioner “ was led to believe that negotiations were being conducted with and on behalf of and with the knowledge and consent of the respondent Commissioner, and that the petitioner believed that he had the approval and the permission of the respondent Commissioner ”. On the morning of March 5, 1954, the commissioner’s representative, the inspector, “ himself provided petitioner with Police Department forms in order that he might prepare his resignation”, and the inspector “himself, before the court, accepted the resignation on behalf of and with the permission of the Police Commissioner and he placed his signature beside petitioner’s”. While “the respondent Commissioner alleges that the petitioner was dropped on the rolls of the Police Department, the petitioner was never advised of same by writing or in any fashion, and that he did not know of such acts until the commencement of this proceeding ”. Had *445 the “ petitioner known that the respondent Commissioner had not already consented to his resignation, he would not have resigned as it was always his intention to return to the service of the Police Department upon being able to do so ”. The petitioner was never notified by the commissioner that the moneys which, during 15 years of service, the petitioner had contributed to the police department pension fund were due and owing to him. Had the “ petitioner’s discharge from the Police Department been legitimate, proper and just, such advice would have been given”. The “ obvious purpose of the Commissioner’s failure to notify was to keep secret his actions so as to deprive petitioner of any opportunity of correcting the wrong being done ” the petitioner. The petitioner states that“ he is willing to face any and all charges which might be made by the Police Department or any one else attacking his honesty and integrity and concerning the performance of his duty as a member of the Police Department, and asks only that he be given a fair hearing with the opportunity to testify in his own behalf ”.
As the factual contentions of the parties, thus delineated, are reviewed, there is but one conclusion — that whether the story told by the petitioner is true or false cannot possibly be determined on the papers alone. Whether the petitioner was an upright law enforcement officer, taken advantage of by his superiors in the department (as he depicts himself), or was a corrupt, scheming rascal who succeeded in having the criminal prosecution against him dropped in return for his resigning from the department and now seeks to renege on his end of the bargain (as he is depicted by the respondent) —is a determination that can be made only after a hearing. But before I conclude to direct such a trial of the factual issue I shall first consider what is so vigorously urged upon me by the respondent as overriding issues of law which would render a hearing unnecessary.
Basically, the respondent argues that the court in this proceeding cannot under the law review the commissioner’s determination refusing reinstatement to the petitioner, that it cannot direct the commissioner to certify that the petitioner’s services, conduct and character while in the department were satisfactory, and that it cannot order that the petitioner be reinstated as a patrolman. Of course, if the court cannot as a matter of law — or should not as a matter of discretion — grant such relief, or part of it, then it is not necessary to determine (in this proceeding) the truth or falsity of the petitioner’s allegations. But if the court can and should redress the wrong, if any, that has been done to the petitioner, then a hearing must first be held to *446 resolve the factual question in issue. That question is, Did the petitioner resign with or without permission of the commissioner? After a hearing it might well be determined that there was such permission, actual or implied.
The respondent contends, first, that reinstatement is discretionary, not subject to judicial review; second, that (whatever the facts) it is not within the legal competence of the police commissioner to reinstate — that this is the function of the civil service commission alone; and third, that since reinstatement cannot in any event be accomplished within the year allowable for such purpose, the issue is now moot. In analyzing these contentions, it will be helpful, at this time, to read the applicable provisions of law.
The rules of the civil service commission (rule Y, § XI, subd. 1) now provide that “ Within the discretion of the Commission and subject to such requirements as it may prescribe, any person who * * * has become a permanent employee * * * and who, thereafter, has been separated from the city service for any cause other than fault or delinquency on his part, shall be eligible for reinstatement to such service at any time within one year from the date of such separation * * * Such reinstatement shall become effective only upon approval by the Commission ”. This rule was changed in 1954 so as to eliminate the then requirement that the departmental head must certify that the applicant’s services, conduct and character were satisfactory prior to resignation, and the provision was substituted that reinstatement was within the discretion of the civil service commission and subject to such requirements as it may prescribe. In the absence of additional requirements by the commission, the rule as amended greatly reduces the powers of departmental heads, and requires a showing only that the applicant was separated without “ fault or delinquency on his part ”. The rule definitely requires a final discretionary act by the civil service commission.
But I would not say that the departmental head has no discretion whatsoever in regard to reinstatement. As is obvious from (among other things) the form of “ Request for Reinstatement ’ ’ used by the civil service commission, the rule contemplates that the police commissioner “ request ” the applicant’s reinstatement; and, as is obvious from the rule itself, the police commissioner must certify that the applicant was separated from the service for reasons “ other than fault or delinquency on his part ”. Unless the police commissioner requests the reinstatement and certifies to the applicant’s separation, the civil service commission will not exercise its *447 power to reinstate petitioner. Such a “ request ” and such a " certification ”, it seems to me, involve both discretionary functions and administrative duties on the part of the police commissioner. Whether in this case it is one or the other, or a mixture of both, does not require determination at this time — for the commissioner’s position is that he has not requested the reinstatement or certified as to the facts in regard to the separation because the " petitioner was dropped from the rolls of the [Police] Department by order of the Police Commissioner for resigning without permission of the Police Commissioner while disciplinary charges were pending ’ ’, and, consequently, that the “ petitioner’s separation from City service was occasioned by fault and delinquency on his part, and petitioner cannot be lawfully reinstated under Bule V, § XI, subdivision 1 of the Rules and Regulations of the City Civil Service Commission ’ ’, and that “ the respondent Police Commissioner acted in a reasonable and lawful manner in refusing to request the City Civil Service Commission to allow petitioner the privilege of reinstatement. ’ ’
The term “ privilege ” as used here by the respondent is a misnomer (cf. Tutun v. United States, 270 U. S. 568, 578). I understand well enough that reinstatement is not mandatory (Matter of Baumet v. Lyons, 272 App. Div. 1095), and that it can be accomplished only by the voluntary act of the person who has the power of reappointment (Matter of Doering v. Hinrichs, 289 N. Y. 29, 33). But I do not, on the other hand, conceive reinstatement as provided in the rule to be a mere “ privilege ”, to be accorded or denied by that person as his personal whim might dictate — in the sense that, if the civil service employee to whom the rule applies desires to effectuate reinstatement, he can be stymied by the arbitrary, capricious or unlawful refusal of the person having appointing or processing power to give reasonable consideration to the application, or (assuming that consideration was given) by basing the denial upon a factually false premise. I have found no decisive appellate authority on the precise question in issue, particularly when what was involved was an application for reinstatement such as this (cf. Matter of Maynard v. Monaghan, 284 App. Div. 280). But there are helpful precedents. For example (to take the most recent case), in Matter of Hamilton v. Monaghan (285 App. Div. 692, affd. 1 N Y 2d 877), the problem involved the police commissioner’s refusal to appoint certain patrolmen, it being the commissioner’s position that, as the chief executive officer of the police department, he is vested with the sole and exclusive power to appoint and to select for appointment; the court *448 held that while the commissioner had a wide discretion in determining whether to make the appointments, that discretion could not be exercised arbitrarily, unreasonably or contrary to law. Similarly, if the commissioner’s contention here is correct (that reinstatement requires an act of discretion on his part), it seems to me that there cannot be an arbitrary, unreasonable, unlawful or capricious deprivation or denial of the necessary preliminary action on the part of the commissioner. A simple supposititious example will, I think, make that quite plain: Assume that the police commissioner refused to approve and forward to the civil service commission an otherwise proper application for reinstatement upon the stated ground that the applicant had dark brown hair, and that the commissioner’s established policy was to request the reinstatement only of former patrolmen the color of whose hair is light brown. Certainly, such a determination would not be deemed beyond the pale of judicial review so as to require at least an appropriate and reasonable justification for such a policy.
But, argues the respondent further, since reinstatement cannot be effected here within the year after the petitioner’s separation from the police force • — which period expired some time ago — his application for reinstatement is now barred (under the rule heretofore referred to) — even though it was submitted within one year from the date of separation. I disagree. In the circumstances of this ease, I hold that the one-year limitation applies only to the time of the presentation of the petitioner’s application, and not to his actual reinstatement. To give the rule as a whole any other interpretation would in effect completely negate it — for the empowered officer could always delay action on the application and thus effectively overcome the clear meaning of the rule (cf. People v. Karr, 240 N. Y. 348, 351; Matter of Cash v. Bates, 301 N. Y. 258; Alliano v. Adams, 140 N. Y. S. 2d 443). That cannot be permitted to be.
It is in the area of the judicial protection of the legal rights of the worst of us that one finds an important measure of differentiation between our democratic way of life and the foreign procedures and ideologies indigenous to the philosophies of dictatorships. The end does not justify the means. In the case at bar, the petitioner asserts that he served the city as a policeman for 15 years with honor and distinction and was entirely innocent of any wrongdoing. On the other hand, the respondent asserts that the petitioner was a member of a grafting ring of policemen who had been indicted for violation of law and who had brought disrepute upon his calling as a law enforcement officer, It may be that the petitioner is a knave and *449 does not deserve to be a police officer. If so, the police commissioner should so state as the ground for the refusal to request reinstatement. To deny the request for reinstatement upon the ground that the petitioner resigned without the commissioner’s permission is a sound ground if permission in fact there was not. But to deny the recommendation on this ground, when in truth there was permission, is not judicially sustainable. The court may not be empowered to order the civil service commission to reinstate the applicant, but the court may in a proper case direct a trial to determine whether or not the police commissioner acted in a reasonable exercise of his recognized discretion or in a capricious and arbitrary manner in refusing to submit petitioner’s application for reinstatement to the civil service commission. In the latter event, the matter could then be resubmitted to the police commissioner for him to reconsider his prior action free from the use of improper or erroneous factors (cf. Matter of Hamilton v. Monaghan, supra).
Accordingly, I direct a hearing (Civ. Prac. Act, § 1295) to determine whether the police commissioner did or did not consent to the petitioner’s resignation before or at the time of its submission. Settle order.