Matthew M. Levy, J.
The petitioner, a resident of Michigan, is an owner of harness racing horses and has been engaged, among other endeavors, in that sport and business in a number of States. On August 31, 1954 he filed an application with the respondent for an owner’s license in this State. The governing legislation is popularly known as the Pari-Mutuel Revenue Law (L. 1940, ch. 254, as amd.). The statute established a State Harness Racing Commission, as a division of the Department of State. The commission was granted ‘ ‘ general jurisdiction over all pari-mutuel harness racing activities in the state and the corporations, associations, or persons engaged therein.” The statute provides that, “ [f]or the purpose of maintaining a proper control over harness race meetings conducted pursuant to this act, the state harness racing commission may license drivers and such other persons participating in harness horse race meets, as the commission may by rule prescribe, including, if the commission deem it necessary so to do, owners ” (Pari-Mutuel Revenue Law, § 41-a, subd. 1). The statutory standards for licensing a participant at harness race meetings are found in subdivision 2 of section 41-a, as follows:
“2. If the state harness racing commission shall find that the experience, character and general fitness of the applicant are such that the participation of such person in harness horse race meets will be consistent with the public interest, convenience and necessity and with the best interests of racing generally in conformity with the purposes of this act, it may thereupon grant a license.
“ Without limiting the generality of the foregoing, the commission may refuse to issue a license, pursuant to this section, if it shall find that the applicant (a) has been convicted of a crime involving moral turpitude ’ \
*192 On February 2, 1955 the petitioner received notice from the respondent denying his application for the license, and specifying the grounds of denial as the petitioner’s convictions of two crimes involving moral turpitude, and that the petitioner’s experience, character and general fitness rendered his participation inconsistent with the public interest in harness racing. The petitioner was entitled to a hearing* before the respondent, on the denial of his application for a license, upon demand therefor within 10 days after notice of such denial. The applicable provisions of the statute are contained in section 47, as follows: ‘ ‘ If the state harness racing commission shall refuse to grant a license applied for under this act * * * the applicant * * * may demand, within ten days after notice of the said act of the commission * * * a hearing, before the commission and the commission shall give prompt notice of a time and place for such hearing at which the commission will hear such applicant * * * in reference thereto.” On February 8, 1955, the petitioner duly made demand for such a hearing. The statute provides that “ [i]n the conduct of such hearing the commission shall not be bound by technical rules of evidence, but all evidence offered before the commission shall be reduced to writing * * *. In connection with such hearing, the commission shall have the power to administer oaths and examine witnesses, and may issue subpoenas to compel attendance of witnesses, and the production of all material and relevant reports, books, papers, documents, correspondence and other evidence. The commission may, if occasion shall' require, by order, refer to one or more of its officers, the duty of taking testimony in such matter, and to report thereon to the commission ” (Pari-Mutuel Revenue Law, § 47).
Admitting that he had been convicted in 1942 of a violation of the Federal Anti-Trust Law and in 1949 of a violation of the Michigan State Labor Act, the petitioner claimed that with regard to the anti-trust conviction he had pleaded nolo con-tendere and had been fined $1,000, that with regard to the labor law conviction he had pleaded guilty to a misdemeanor and had received a suspended sentence, that both convictions arose from technical violations resulting from certain trade union organizational activities in which he was engaged, and that, in any case, they did not involve moral turpitude. In support of the case which he expected to present at the hearing before the respondent, the petitioner stated that he desired to submit the *193 testimony of a judge, several prosecuting attorneys, and an executive of a leading automobile manufacturer, all residents of Michigan; and the petitioner requested the respondent to issue a commission upon oral or written interrogatories in order to obtain their depositions in that State. The respondent denied the petitioner’s request to effectuate the taking* of the depositions of the nonresident witnesses out of this State. The petitioner then applied to the court for an order directing the respondent accordingly. This application was denied at Special Term on the ground that there was no power to direct the issuance of interrogatories, but the court stated that, if a license were denied the petitioner by the respondent upon the conclusion of the hearing, then “ a [judicial] review can be had in which the question can be determined whether the refusal to provide for the taking of the testimony in question was proper.” (Steuer, J., N. Y. L. J., June 14, 1955, p. 8, col. 3.)
Averring that ‘ ‘ it became apparent to petitioner that without such an order for written interrogatories, the obtaining of all the necessary testimony in support of petitioner’s contentions would be extremely difficult if not practically impossible ”, and that “ petitioner came to the conclusion to withdraw all the papers and proceedings theretofore initiated by him before the respondent commission,” the petitioner by telegram to the respondent, dated November 9, 1955, requested a withdrawal of his application and all petitions subsequently filed before the commission. By letter dated the same day, his attorneys requested a withdrawal of “ the appeal [hearing?] and/or petition * * *. In addition our client has suggested to us that we apply further on his behalf to the Commission for a complete withdrawal of his initial application for the issuance of a license. * * * Mr. Burns of our office will appear on the 10th inst. pro forma, merely for the purpose of spreading our letter request upon the record, and we assume that you will reserve decision in this matter, and Ave do trust that you will act favorably upon this application ”. On November 10, 1955, at the continued hearing before the respondent, counsel for the petitioner orally “ move[d] to withdraw any and all proceedings of any kind and nature now pending* before this Commission ’ ’, stating that in substance his motion was in conformity with the letter. The respondent thereupon stated: “ Your motion to withdraw the appeal [hearing?] is granted and I will take under consideration that part of your application for permission to Avithdraw the original application for a license ”.
Thereafter, and on December 8, 1955, there appeared on the front page of the New York Law Journal an opinion of the *194 Appellate Division, First Department, which in effect held that' an open commission under the Civil Practise Act may he issued to take testimony of a witness out of the State for use in a proceeding pending before an administrative body (Matter of Corporation Counsel of City of New York v. Smith, 286 App. Div. 561). On January 7, 1956 the petitioner’s attorneys wrote the respondent “ requesting the reopening of these proceedings and a fixing of a date when we can resume hearings ”, and, referring to the Appellate Division decision, asked that “ we be allowed to have the benefit of the depositions of * * * the witnesses on behalf of Mr. Brennan [the petitioner] and whose presence in New York might not be possible because of their being nonresidents of the state.” On January 19, 1956 the respondent wrote the petitioner’s attorneys that he “ denies your request to reopen the appeal [sic] voluntarily discontinued by your client from the decision denying his application for a license.” Hence the institution, on May 10, 1956, of the instant proceeding under article 78 of the Civil Practice Act, which eventually was submitted to me for disposition.
The petitioner argues that he has been innocent of any wrongdoing ; that, in his application to withdraw, it was plain that he intended, and expressly moved, to withdraw the entire proceeding, including the application for a license, and that the respondent could not validly divide the motion into parts — resulting in a discontinuance of the hearing demanded in consequence of the denial of the license applied for, and at the same time deny the withdrawal of the initial application for a license, thus permitting to remain in full force the respondent’s denial of the petitioner’s application for the license; that the respondent’s refusal to grant a license to the petitioner has been the subject of notification to other States where the petitioner has an active interest in harness racing and that his status there has thereby been adversely affected; and that, if the hearing is reopened, the petitioner can now present the testimony of the out-of-State witnesses, which is but just and fair in the premises. The respondent contends that the petitioner is a convicted criminal and of bad character; that the hearing, previously demanded by the petitioner was voluntarily discontinued by him; that the respondent has not as yet (contrary to the petitioner’s assertions) acted upon the matter on which he, the respondent, had reserved decision — that is, on “that part of your [the petitioner’s] application for permission to withdraw the original application for a license that the respondent’s ruling as to withdrawal and reservation was one within his discretion, and that there is no statutory basis for an article 78 proceeding to review it; and that the instant proceeding is barred as untimely.
*195 As I view the matter, the issue before me is not whether the petitioner is indeed an angel or a devil, or whether he can now adequately present proof of lack of moral turpitude in the commission of the crimes of which he was convicted or whether his experience, character and general fitness, as shown by the record before me, are such that in denying him an owner’s license to participate in harness horse race meetings in this State, the respondent acted within his unimpeachable administrative competence.* The initial questions presented are whether an article 78 proceeding is appropriate and whether it is timely. That, of course, brings me back to the statutory procedures in the case of the respondent’s refusal to grant a license in any specific instance: If there be such refusal, and due demand for a hearing (as in the case at bar), then, “ [p]ending such hearing and final determination thereon, the action of the commission in refusing to grant * * * a license shall remain in full force and effect. The commission may continue such hearing from time to time for the convenience of any of the parties. * * * Within thirty days after the conclusion of such hearing, the commission shall make a final order in writing, setting forth the reasons for the action taken by it and copy thereof shall be served on such applicant * * *. The action of the commission in refusing to grant a license * * * shall be reviewable in the supreme court in the manner provided by and subject to the provisions of article seventy-eight of the civil practice act.” (Pari-Mutuel Revenue Law, § 47.) If this proceeding in pursuance of the remedies provided in article 78 of the Civil Practice Act were one in the nature of certiorari to review the respondent’s denial of a license to the petitioner prior to the hearing provided for in section 47 of the Pari-Mutuel Revenue Law (which it is not) and if such initial refusal were subject to judicial review (which is not now necessary to determine) I should sustain the respondent’s contention that the proceeding was not timely brought — since the respondent refused the license applied for on February 2, 1955, and this proceeding was not commenced until May 10,1956, long after the expiration of the four months’ Statute of Limitations established in article 78 (Civ. Prac. Act, § 1286).
*196 As I have said, this proceeding has not been instituted to annul the respondent’s refusal to grant a license to the petitioner. Nor, notwithstanding the way the petitioner has entitled his papers, has it been waged only for an order reviewing the determination of the respondent. In express terms, according to the notice of motion, it is brought ‘ ‘ for an order annulling the determination of the respondent in refusing to grant petitioner’s application to reopen the appeal [sic] from the denial of the petitioner’s application for a [harness racing owner’s] license and directing the respondent to reopen the hearing for the purpose of taking additional proof thereon, and for such other and further relief as to the Court may seem just and proper ”. And in his petition, the petitioner prays that the respondent be directed “ to reopen said hearings for the purpose of taking additional proof thereon to the end that this matter may be completed and reviewed on the merits I hold that while the specific relief prayed for is unavailable to the petitioner in the present proceeding, he is not, even in this proceeding, altogether without remedy. What is the precise redress to which the petitioner is now entitled?
The respondent’s refusal to reopen the hearings, it is true, was not so far in the distant past (ruling made January 19, 1956) as on that ground not to be subject to review in this proceeding (commenced May 10, 1956). But the respondent’s denial of the petitioner’s request in that regard was not a “ final determination ” within the meaning of section 1286 of the Civil Practice Act, nor was it one “ refusing to grant * * * a license” within the meaning of section 47 of the Pari-Mutuel Revenue Law — and, therefore, it is not reviewable in the instant proceeding (cf. Matter of Roxy Wines & Liqs. Corp. v. New York State Liq. Auth., 5 Misc 2d 343, 347, and Matter of Perotta v. Gregory, 4 Misc 2d 769, 775-776, and cases cited therein). Moreover, since the respondent is empowered to conduct the hearing before him as would be appropriate under normal administrative procedures, and since he is not bound by technical rules of evidence, it wmuld seem to have been incumbent upon the petitioner to have submitted some proof tending to show that the prospective witnesses would in fact testify as hoped for by the petitioner before it can be held that the ruling of the respondent was arbitrary or capricious or contrary to law. And, unless it is that, an administrator’s act is not subject to judicial overruling (see Matter of Everly v. Weaver, 7 Misc 2d 965, and the cases cited therein). Finally, the petitioner’s prayer that the respondent be directed to reopen the hearings for the purpose of taking additional proof would bring *197 no satisfactory results if the petitioner were to rely solely upon the prospective out-of-State depositions sought to be taken under the applied-for, but now most unlikely, direction of the respondent. And here, I think, it is appropriate to note that the decision of the Appellate Division which had inspired the petitioner’s efforts to reopen the matter administratively before the respondent has since been reversed by the Court of Appeals (Matter of Corporation Counsel of City of New York v. Smith, 1 N Y 2d 813, revg. 286 App. Div. 561; cf. Matter of Klein [Larner], 309 N. Y. 474).
The petitioner proceeds upon the assertion that the respondent has denied the petitioner’s motion to withdraw his original application for the license. A careful examination of the documents, however, has led me to the conclusion that the petitioner is uncertain as to whether the respondent has ever made a determination of the petitioner’s motion in that regard, on which motion the respondent had reserved decision at the hearing held on November 10, 1955. Certainly, the date of such determination, if made, does not appear in the papers submitted. On the other hand, in the memorandum of law submitted to me by the respondent, it is stated that the motion has not yet been decided. If that be so — and I take it to be the fact — I do not agree with the respondent’s contention that the court may not intervene. If the statutory scheme, as contended by the respondent, does not permit judicial review of his actions until a ‘ ‘ final determination ’ ’ by him, and if that final determination is not made until he has completed all actions in the premises on his part to be taken, then the petitioner would in effect be forever deprived of his right to review by the courts. And the initial refusal of the respondent — a decision made without a hearing — would permanently foreclose the petitioner’s obtaining a license, however just his application may have been, or however vulnerable the respondent’s refusal may have been. I do not believe that the legislation under study intended to accomplish such a result. The respondent must dispose of the motion pending before him and must conclude the matter. He cannot keep the issue suspended in mid-air, to the petitioner’s prejudice.
Although, prior to the enactment in 1937 of article 78 of the Civil Practice Act, the form of each remedy therein consolidated _certiorari to review, mandamus and prohibition — was held to have been so distinct in purpose that a petitioner who selected the improper special proceeding was denied relief without a disposition of the merits of his claim (Third Annual Report of N. Y. Judicial Council, 1937, p. 174), that is not the case now *198 (cf. Matter of New York Post Corp. v. Leibowitz, 2 N Y 2d 677, 683-684). And I have determined to dispose of this application accordingly. It is significant, therefore, to recall that, while the first prayer for relief set forth in the petitioner’s notice of motion is cast in terms of a request for an “ annulment ” of the respondent’s determination (review by way of certiorari), the petitioner also asks* in his second prayer for relief, that the respondent be directed to reopen the hearing (order by way of mandamus). In that latter aspect of the case, the limitation established in section 1286 of the Civil Practice Act ‘1 is measured from the time of refusal after demand to perform a duty mandated by law ” (Matter of Foy v. Brennan, 285 App. Div. 669, 673). Consequently, the four-month period for that purpose had not expired at the time of the commencement of this proceeding. True enough, the petitioner seeks a direction to reopen the hearing “ for the purpose of taking additional proof ” and I have found that to have been an issue within the discretion of the respondent and not presently subject to judicial control. But I hold that the expression of such abortive purpose is not, in the circumstances, fatal to the basic prayer* that the respondent'be directed to reopen the hearing.
In view of the fact that the respondent has reserved determination on the motion of the petitioner for the withdrawal of his application for a license and has not as yet rendered a decision thereon, the matter is remanded to'the respondent to reopen the hearing for the purpose of making a disposition of that motion. After a decision by the respondent on the reserved question and the conclusion thereon of the hearing, the petitioner may institute such proceeding in this court as he may be advised to commence. Settle order accordingly.

 The parties have referred to the hearing procedures set up in the statute here involved as an “ appeal ” to the commission from a decision made by the commission. This is, as I see it, a misnomer and may lead to confusion,

 I have had occasion to say elsewhere, in substance, that, in my view, it is in the area of the judicial protection of the legal rights of the worst of us that one finds an essential factor indigenous to our democratic way of life (Matter of Winkle v. Adams, 4 Misc 2d 441, 448; see, also, Burke v. Kingsley Books, 208 Misc. 150, 161, affd. sub nom. Brown v. Kingsley Books, 1 N Y 2d 177, affd. 354 U. S. 436).

 The petitioner has also asked before me “ for such other and further relief as to the Court may seem just and proper”.