McGivern, J.
This is a motion to punish for contempt in a proceeding brought under article 79 of the Civil Practice Act.
By resettled order herein dated July 2, 1951, made by Mr. Justice Cohalan, respondent was removed as trustee of a trust created under the will of his father and directed to turn over the corpus to a successor trustee designated in said order. For his failure to do so, respondent was adjudged in contempt by order dated November 5,1951, made by Mr. Justice Babin. Pursuant to said order, he was incarcerated from December 7,1951, until March 28,1952, when he was released by order of Mr. Justice Greenberg. That order was granted under section 775 of the Judiciary Law upon a showing by respondent of his destitution and inability to comply with the direction to turn over the corpus.
The trustee designated by Mr. Justice Cohalan’s order failed to qualify. In 1955 petitioner, who is entitled to a portion of the income of the trust for life, moved for the designation of a new trustee and a direction to respondent to turn over the corpus to such new trustee. Bespondent, opposing- the granting of this relief, argued that he might again be threatened with imprisonment if he failed to pay the new trustee. In its opinion (N. Y. L. J., Sept. 6,1955, p. 6, col. 6) this court stated that a new trustee would be appointed and respondent would be directed to turn over the corpus of the trust to him, and added: 1 ‘ Whether respondent can be again imprisoned if he fails to make payment to the new trustee is not now before the court. ’ ’
Like Banquo’s ghost, this question will not down, and is presented by this application to punish for contempt. It is undisputed that respondent has not paid the corpus to the trustee designated in the order of this court dated October 14, 1955, entered on said opinion.
*768 The moving papers do not show any facts indicating that respondent’s financial condition has improved since 1952 when he was released from confinement by Mr.. Justice Greenberg or that he is able to comply with the order. The answering papers show facts indicating respondent’s destitution. Under these circumstances, if the respondent were incarcerated and if he applied for release under section 775 of the Judiciary Law, on the present papers such relief would have to be granted.
The question is thus posed whether, on a motion to punish for contempt where the contemner shows inability to comply, he must be punished and then apply for release, or whether the whole matter may be disposed of at once. In Schmohl v. Phillips (138 App. Div. 279, 280 [1st Dept., 1910]) , it was held that under such circumstances the motion to punish for contempt must be granted “ and the question of defendant’s ability to comply with it determined upon his motion to be discharged from imprisonment as provided in section 775 of the Judiciary Law (Consol. Laws, chap. 30; Laws of 1909, chap. 35). (Wheelock v. Noonan, 55 N. Y. Super. Ct. 302; Ryckman v. Ryckman, 34 Hun, 235; Matter of Strong, 111 App. Div. 281; affd. 186 N. Y. 584.) ”
In 1936 (L. 1936, ch. 338), section 84 of the Surrogate’s Court Act was amended to provide: “ The surrogate, in his discretion, may refuse to punish any person for contempt of court, as authorized in this section, in an instance in which facts are demonstrated to his satisfaction which would justify a release of such person from imprisonment in accordance with the provision of section seven hundred seventy-five of the judiciary law.”
The genesis of this amendment was explained by the late Surrogate Wingate in Matter of Lent (159 Misc. 411, 412-413 [1936]). He stated that the bill providing for such change was introduced at the suggestion of the executive committee of the Surrogate’s Association of the State of New York and that: “ The object of the introduction of the bill as recited in the note appended thereto upon its presentation and enactment was ‘for the purpose of correcting the situation created by the decision of Schmohl v. Phillips, 138 App. Div. 279, and other cases based upon its authority. Under the rule thus established, it is obligatory upon the court to imprison a respondent in spite of a demonstration of pertinent circumstances which would require it to issue an order for release upon an application made immediately after the incarceration. Such a situation imposes needless hardship upon an unfortunate person, and involves a useless *769 expense and waste of the time of the court, and should he corrected in the interest of substantial justice/ ”
Although this statute in terms applies only to the Surrogate's Court, its obvious purpose was to overrule Schmohl v. Phillips (supra) and it should be applied to proceedings in the Supreme Court. In the recent case of Matter of Corporation Counsel, City of N. Y. v. Smith (286 App. Div. 561, 566 [1st. Dept., 1955]), Mr. Justice Bbeitel said: “ Where legislation deals with subjects in the judicial field or substantially touches on the judicial experience, it becomes a judicial duty, and not an unwarranted license, to make effective such legislation and implement it with the breadth and dynamics of liberal interpretation. A contrary approach not only clutters the statute books, but desiccates the spirit and purpose of salutary legislation. (Cf. Matter of Gilchrist [Dahl], 130 Misc. 456, 463-466.) ”
It would verge on the irrational to hold that the Legislature intended to change the practice as regards fiduciaries whose accounts are settled in the Surrogate’s Court but to leave the doctrine of Schmohl v. Phillips in effect as to those fiduciaries whose accounts happen to be the subject of proceedings in the Supreme Court. In 1933, section 1172-a of the Civil Practice Act was amended to give similar discretion to this court on application to punish for contempt in matrimonial cases. The failure of the Legislature to have the 1936 amendment apply both to the Surrogate’s Court and to the Supreme Court can be explained by the fact that the overwhelming preponderance of fiduciary accountings are had in the former court and the fact that the legislation was instigated by the Surrogate’s Association.
Since 1910, when Schmohl v. Phillips was decided, there has been a decided trend of public policy against imprisonment for debt. For example, in 1940, section 764 of the Civil Practice Act was amended to make the issuance of body execution discretionary. (Zeidner v. Sakal, 194 Misc. 642, 643 [1949].) Citation of authority is unnecessary to show that there is also a trend in favor of simplification of practice.
The conclusion is inevitable from the foregoing that Schmohl v. Phillips is no longer binding, and that it is not longer necessary for a contemner unable to comply with an order first to be imprisoned and then to move for his release.
The motion is denied without prejudice to renewal upon a showing of respondent’s ability to obey the portion of the order with which he has not complied.