Van Voorhis, J. (dissenting).
If “ Arbitration is not merely a step in judicial enforcement of a claim nor auxiliary to a main proceeding, but the full relief sought” (Goodall-Sanford v. Textile Workers, 353 U. S. 550, 551), it would relieve the courts if the arbitrators enforced their own awards in specific performance instead of delegating that essential function to the courts after they have been discharged from further duty. Only recently was it settled that an arbitration award will be enforced by the courts which grants, under an appropriate arbitration clause, equitable relief by injunction (Matter of Ruppert [.Egelhofer], 3 N Y 2d 576). More recently it was held that our courts would enforce specific performance of an employment contract on an arbitration award (Matter of Stahlinski [Pyramid Elec. Co.], 6 N Y 2d 159) even though a court of equity would not compel a man to work for another or to continue another in his employment (see dissenting opinion by Judge Burke in Matter of Stahlinski [Pyramid Elec. Co.], supra, p. 165). The decision in the present case lends the enforcement machinery of the courts, to implement specific performance directed by arbitration that extends beyond any equitable relief which the courts have heretofore granted either on arbitrations or after trial.
The mechanism for enforcement of this award of specific performance of a complicated construction contract for the erection of a building estimated to cost $5,000,000, is a judgment to be entered following confirmation of the award under section 1466 of the Civil Practice Act which provides that “ The judgment so entered has the same force and effect, in all respects as, and is subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered.” This signifies not that the arbitrators but that the court is the agency which will be called upon to supervise the construction of this elaborate and expensive building, and which will be required to do so by the very inappropriate remedy of punishment as for contempt of court. The plans and specifications, whether they have been finally approved by the parties or not, are not before the court and have been materially changed since the contract was made. They have been the subject of long and acrimonious disputes *140 between the parties which are not likely to end with the entry of a judgment on this award for specific performance.
Respondents’ brief admits that the enforcement of this building contract will be the responsibility of the court and not that of the arbitrators (pp. 17-18). In a case of this kind, that circumstance closes the gap between what courts and boards of arbitration can do in specific performance where the objection to that form of court relief is impossibility of adequate enforcement. That is the basis on which courts have traditionally declined to grant specific performance of elaborate and time-consuming building construction contracts (Beck v. Allison, 56 N. Y. 366, 370; Standard Fashion Co. v. Siegel-Cooper Co., 157 N. Y. 60; McCormick v. Proprietors of Cemetery of Mt. Auburn, 285 Mass. 548; Jones v. Parker, 163 Mass. 564; Restatement, Contracts, § 371). This section of the Restatement says: “ Specific enforcement will not be decreed if the performance is of such a character as to make effective enforcement unreasonably difficult or to require such long-continued supervision by the court as is disproportionate to the advantages to be gained from such a decree and to the harm to be suffered in case it is denied.”
"Where difficulty of enforcement is the reason for nonintervention by courts of equity, it is equally a reason on account of which restraint should be exercised in confirming and entering judgment upon arbitration awards where the difficulty of enforcement is precisely the same whether the judgment has been entered on the decision of a court or on an award in arbitration. This objection to the confirmation of this award is not based upon any threatened usurpation by the court of the jurisdiction of the arbitrators. This objection does not arise out of anything which the arbitrators did or omitted in the performance of their functions, but springs from difficulty in enforcement problems which devolve upon the court under the arbitration article of the Civil Practice Act which is invoked by respondents in moving to confirm the award. It was well said by Frank E. Johnson, J., in Queens Plaza Amusements v. Queens Bridge Realty Corp. (22 Misc 2d 315, revd. on other grounds 265 App. Div. 1057): “It is a fundamental limitation upon the jurisdiction of any equity court that it will not entertain demands that are inherently unenforcible by it. A *141 decree in personam is enforced by contempt and whether or not there had been default would involve the trial of a question of fact as to plans, specifications, construction details, etc.; the enormous detail indicated by this contract would put the court in a position of a building superintendent and an architect, passing upon an incredible number of problems arising on a building construction large enough to warrant the mortgage of $140,000. This is so plainly outside of the power and function of a Justice of this court that supervision of the performance of such agreements cannot be entertained; they are outside of the practicable limits of equity jurisdiction.”
These problems are neither solved nor diminished by the circumstance that this responsibility of supervision of the construction of this building has to be undertaken by the court as the result of an arbitration. If the arbitrators were to remain upon the scene and supervise and enforce the building operations which courts are not created to handle, the result might be different. Once the award has been confirmed and judgment of specific performance entered, the arbitrators depart and the court has to enforce the building contract by contempt proceedings against the appellant and the persons of its officers and agents. The court cannot look to the arbitrators to resolve disputes arising in the erection of this building, either of interpretation of the building contract, plans or specifications, or concerning performance. The theory on which judgment will be entered is that the award is final and definite so that the acts to be performed can be clearly ascertained and the court determine whether or not the performance rendered is in accord with the contractual duty assumed (Civ. Prac. Act, §§ 1461-1462; 5 Corbin, Contracts, pp. 756-760). In order to punish deviation from the specific performance directed, or to decide whether or in what respects there has been performance, substantial performance or nonperformance, the court will be unable to call in the arbitrators to interpret its decree or subrogate them to vindicate its dignity if its decree is violated.
The court cannot appoint a receiver as an arm of the court to take possession of the property and cause the work to be done as was pointed out in Beck v. Allison (supra). The unsatisfaotoriness of contempt of court as the means of enforcement of transactions of this kind is augmented by the inability of the *142 court to punish defaults that are not willful or deliberate (Staples v. Staples, 206 App. Div. 196; see opinion by McGivern, J., in Matter of Chassman [Probyn], 1 Misc 2d 766).
While ‘ ' There is no universal rule that courts of equity never will enforce a contract which requires some building to be done ”, in the words of Justice Holmes in Jones v. Parker (supra), the " question is practical rather than a matter of precedent ” and specific performance of construction projects can be decreed, said Justice Holmes, where the possible differences between the parties over the performance of the undertaking are such as lie ' ' within a narrow compass and which can be adjusted by the court.” All that was involved there was the installation of heating and lighting apparatus for the benefit of a lessee. Jones v. Parker is “A decision which has often been cited for more than it held ” (164 A. L. R. 802, 822). A similar holding was made in Strauss v. Estates of Long Beach (187 App. Div. 876) in directing the specific performance of a covenant to construct a sewer in a street in a subdivision in which the plaintiff had already purchased a lot from the defendant. A highway crossing was required to be constructed across a railroad in Post v. West Shore R. R. Co. (123 N. Y. 580). Professor Oorbin enumerates in section 1172 of his work on (Contracts situations where a court ‘' has ordered performance of building repairs and other construction work ”, relating to such relatively simple matters as the enforcement of contractual obligations for the construction of highway bridges, digging wells, repairing houses, laying sidewalks in subdivisions or refilling excavations after mining or gravel pit operations have been completed. But because this can be done in some instances does not mean that it can be done in all, nor does equitable jurisdiction in arbitrators signify that the courts will enforce anything that arbitrators may do — especially if it is of a nature that has been held to be unenforcible by judicial decree. None of the projects just enumerated approximate the complexity and magnitude of the building operation involved here.
The board of arbitration, without doubt, would have had jurisdiction to award damages to petitioners for any breach of this construction contract which has occurred but they were not asked to award damages. Petitioners told the arbitrators *143 that they did not want damages but specific performance, which it is evident that the arbitrators granted pro forma because the contract said that a building was to be erected, and without considering whether the construction of this building by appellant had become impossible. They appear not to have understood that specific performance is not granted mechanically, that equity does not enforce idle ceremonies, that before making an award of this kind they had to rule upon whether performance had become impossible (Saperstein v. Mechanics & Farmers Sav. Bank, 228 N. Y. 257) and that if it was impossible petitioners would be relegated to damages. The record before us indicates that appellant applied unsuccessfullly to 27 different lending institutions in order to obtain the necessary mortgage money with which to erect this building. Petitioners appear to recognize that for this reason the building may not be constructed by appellant even after the entry of a specific performance decree. They profess an intention of suing for damages by the recovery of a fine to be imposed on appellant under section 773 of the judiciary Law in case appellant is adjudged in contempt (petitioners-respondenfs ’ brief, pp. 17-18). This contention presents a double anomaly in that (1) if it is impossible for appellant to construct the building, its failure to do so would not be willful and, therefore, would not subject it to punishment for contempt, and (2) the board of arbitration is deprived of its function to assess damages which should have been claimed and awarded in the first instance in case they found specific performance by appellant to be impossible.
Therefore, even if confirmation were not denied to the specific performance award on account of difficulty in enforcement, the award should be vacated and the matter remitted to the arbitrators to rule upon whether specific performance by appellant is possible and, if they find it is not, to decide upon the question
Judges Dye, Fuld and Froessel concur with Chief Judge Desmond; Judge Van Voorhis dissents in an opinion in which Judges Burke and Foster concur.
Judgment affirmed.