In the Matter of ROBERT F. LOVE, Individually and as President of the Lieutenants Pre-Eligibles Association 1972, Fire Department, City of New York, Respondent, *v.* HARRY BRONSTEIN, as Chairman of the City Civil Service Commission and Director of Personnel of the City of New York, et al., Appellants, and DAVID M. McCORMACK, Individually and as President of the Uniformed Fire Officers Association, Local 859, International Association of Fire Fighters, AFL-CIO, et al., Intervenors-Respondents-Appellants.

First Department, February 14, 1974.

*Ellen Kramer Sawyer* of counsel (*Stanley Buchsbaum* with her on the brief; *Norman Redlich, Corporation Counsel*), for appellants.

*Murray A. Gordon, P. C.* (*Marina Angel* with him on the brief), attorney for intervenors-respondents-appellants.

*Thomas F. McCarthy* for respondent.

MURPHY, J. In this article 78 proceeding, respondents and intervenors-respondents appeal from a judgment, *inter alia*, declaring null and void the appointment of 115 persons to the rank of Lieutenant of the Fire Department.

The essential facts are not in dispute. On January 24, 1972 the Fire Commissioner notified the Mayor and the Comptroller

of the City of New York of a proposed change in the Fire Department's appropriation schedule for the fiscal year 1971–72 increasing the budget quota for officers' positions to 106 by restoration of 72 Lieutenants' positions previously eliminated and the creation of 34 new positions.* The proffered justification for such increase was "the additional work load in the department." The proposed change was approved by the Budget Director and the actual appointments were made on February 5, 1972, from an eligible list which was due to expire in 15 hours. On June 14, 1972, over four months later, the budget modification was published in the *City Record*.

Petitioners, who are members of the present Lieutenant eligibles list, claim to be aggrieved by the additional appointments, and question both the motives of the Fire Commissioner in creating the additional budget positions and the legality of the promotions thereafter made. After noting that the disposition of the new appointees and the almost immediate reduction in the new quota indicated a lack of real need for the additional appointments, the trial court granted petitioners' application on the grounds, *inter alia*, that the publication of the budget change in the *City Record* was defective because of the failure to give the requisite 10 days' notice; and that even if such publication was timely, the appointments made were unauthorized and, under the circumstances of this case, would lead to grave evasions of the Civil Service Law. We reach a contrary conclusion.

The authority for the commissioner's action stems from subdivision a of section 124 of the New York City Charter, which provides: " § 124. Budget modification.— a. Subject to the provisions of this charter, of the civil service law and of other applicable statutes, changes in schedules, within units of appropriation, activities or institutions, may be made prior to the commencement of or during the fiscal year by the head of the affected agency except that the mayor may withdraw from such affected agency, and upon such withdrawal, himself exercise the power to make such changes in such schedules applicable to such agency. Such changes shall be published in the City Record and written notice thereof shall be given to the mayor and the comptroller not less than ten days before the effective date thereof."

---

* The difference between the number of Lieutenant lines created by the budget modification and number actually appointed on February 5, 1972 is apparently explained by the fact that several Lieutenants were promoted to Captain on the same day.

Unlike subdivision c of section 124, which authorizes only the Board of Estimate and the Council to make certain transfers of appropriations from one agency to another, or to establish a new unit of appropriation, subdivision a of section 124 of the City Charter grants agency heads, or the Mayor, the power to change schedules, during the fiscal year, within units of appropriation. Moreover (and again unlike the situation described in subdivision c of section 124) such budgetary modifications, by the transferral of funds intra-agency from one program to another to the extent that the funds have already been appropriated by the budget for that fiscal year, may be made without the necessity of first holding public hearings. Since no hearings are required for schedule changes within appropriation units, there is no need to give advance notice to the public of such changes. Accordingly, we construe subdivision a of section 124 as only requiring that 10 days' prior written notice of the proposed transfer be given the Mayor and the Comptroller; and that said provision is inapplicable to the further requirement that " such changes shall be published in the City Record ".

While it would appear from a reading of the statute that publication contemporaneous with the forwarding of the required written notices was envisioned, the four-month delay in publishing the changes in the *City Record* does not, alone, invalidate the public action taken, since such filing provision is merely directory. (McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 172; cf. *Harman* v. *Board of Educ. of City of N. Y.,* 196 Misc. 287, affd. 275 App. Div. 694, affd. 300 N. Y. 21.)

Although petitioners concede that the obvious purpose of subdivision a of section 124 of the City Charter is to permit budget modifications during the fiscal year, they nevertheless argue that said section does not authorize the creation of new jobs and positions. In support of such contention, they rely heavily on *Matter of Broderick* v. *City of New York* (295 N. Y. 363). In our view, such reliance is misplaced.

In *Broderick* the Budget Director of the City of New York with the concurrence of the Comptroller modified the city's expense budget by eliminating 10 positions of Battalion Chief in the Fire Department and then creating a like number of additional positions in the next higher rank of Deputy Chief. The purported authority of such modifications was contained in section 128 of the 1938 City Charter which empowered the Budget Director upon request of an agency head and " with the approval of the board of estimate ", to transfer an appropria-

tion or part thereof from one line to another within the same schedule during any fiscal year. The explicit language of said section required Board of Estimate approval and the absence thereof precluded the attempted modification. Since subdivision a of section 124 contains no similar restriction, we must assume that greater flexibility was now intended to be given to heads of agencies to change schedules within units of appropriation previously made for such fiscal year.

Having decided, then, that the schedule change which created the additional budget positions for the Lieutenant rank was within the Fire Commissioner's statutory authority, and that the applicable statute was complied with, we turn now to the question of whether we can review the commissioner's motives in making such appointments on the last day the eligible list was in existence. Petitioners argue that there was no proven need for such appointments and point to the subsequent assignments and reassignments of the appointees as proof that the appointments were merely an unnecessary accommodation to those on the dying list. However, where, as here, there is no assertion made that the appointees were unqualified, the courts lack the power to review the determination and discretion of an agency head as to the time when vacancies shall be filled and the number of eligibles who should be then appointed. (*Matter of Turel* v. *Delaney,* 287 N. Y. 15; *Matter of Delicati* v. *Schechter,* 3 A D 2d 19, 21.)

The order and judgment (one paper) of Supreme Court, New York County (GREENFIELD, J.), entered May 25, 1973, should be reversed, on the law, without costs and without disbursements, and the petition dismissed.

KUPFERMAN and TILZER, JJ., concur with MURPHY, J.; NUNEZ, J. P., dissents and votes to affirm on the opinion of GREENFIELD, J.

Order and judgment (one paper), Supreme Court, New York County, entered on May 25, 1973, reversed, on the law, without costs and without disbursements, and the petition dismissed.