Edward J. Greenfield, J.
Judicial decisions have recognized human virtues such as love, beneficence, filial devotion and self-secrifice, and they often have to cope with human vices, particularly greed, sloth, indifference and gullibility. They have lauded mothers and fathers, dutiful husbands and loving wives, steadfast friends and dedicated fiduciaries. Never, however, to this court’s recollection, although there is no pretense of exhaustive research, has the mother-in-law received her due.
The mother-in-law occupies a special status in our society, usually as the butt of ridicule, scorn and a source of matrimonial misunderstanding. Ever since Terence observed more than 2,000 years ago, ‘ ‘ Ita ammum induxerunt socrus omnes esse iniquas ” (people have made themselves believe that all mothers-in-law are harsh), and undoubtedly even before, mothers-in-law have been given short shrift. The biblical tale of Ruth and her devotion to Naomi, her mother-in-law, is viewed as an outstanding exception to the almost universal belief that mothers-in-law have a standing on the social scale somewhat beneath grave robbers, horse thieves and boiler room operators, and possibly somewhat higher than witches, camp followers and members of Congress. Fathers-in-law, notwithstanding, have been noticeably immune from this kind of treatment — some indication of the age-old disparity in treatment of males and females.
The time has come to speak out forcefully and to give judicial recognition to the fact that mothers-in-law are not as bad as they are painted. Popular myth to the contrary notwithstanding, many a man will secretly admit to a sneaking admiration for his wife’s mother — and not only for her cooking. Surely the traits he found sufficiently attractive in his wife to induce him to enter into a life-long relationship must be reflected somewhere in the person of the parent. For every mother-in-law who is domineering, there are dozens who are sustaining. For every one who is prying, there are a score who are understanding. The in-laws may provide financial assistance for a young *242 married couple, serve as convenient baby-sitters for the grandchildren and provide the necessary shoulder to lean on. Many a time the mother-in-law is an integral part of the family, living in the same household and respectfully addressed by her child’s spouse as “mother”. She may become in time a mother-in-fact, as well as a mother-in-law.
The occasion for these observations and the possibly belated celebration of the virtues of the mother-in-law are prompted by this article 78 proceeding, which challenges the cold and impersonal regulations of the Civil Service Commission as being arbitrary and capricious, and failing to give due recognition to the special status of one’s mother-in-law. The petitioner, George Harehack, is a patrolman employed by the Police Department of the City of New York. In September, 1973, he was certified as eligible to take the promotional examination for the position of police sergeant. That examination was scheduled for November 10, 1973. Unfortunately, when that day of opportunity arrived, petitioner was unable to appear as he had to partake in a more tragic event on that date — the funeral of his mother-in-law. Two days later he requested permission to take a make-up examination because of a death in the family. The Civil Service Commission denied that request on the ground that “the deceased was not related”, as stated in rule 4.4.10. That rule permits a make-up examination where, among other things, the candidate has failed to take the test because of compulsory attendance before some public body or official, physical disability, Sabbath observance, or as set forth in subdivision (d), “ absence for a-period of one week from the date of death of a spouse, mother or father, or child of1 such candidate. ’ ’ Petitioner attacks this narrowly restrictve rule as arbitrary and capricious.
Understandably, the rule was designed to prevent absences for frivolous reasons as distinguished from those occasions involving genuine mourning and bereavement. Obviously, the line has to be drawn someplace. If the rule were to permit absences for the death of friends or distant relatives, there would be no objective way of measuring the degree of loss and the necessity for a candidate’s absence. Make-up examinations are not lightly to be given, especially when a claim of someone’s death may merely be an excuse to cover the unpreparedness of the candidate or an inclination on his part to be anywhere but in the examination room. There can be no doubt, however, that upon the death of a spouse, parent or child, the shock and the exigencies of mourning would preclude a candidate from *243 giving full concentration and attention to an examination for vocational advancement. The personal tragedy of the death of one’s parent is not vicariously suffered by the spouse. He or she is directly involved when the parent of either spouse passes away. Not only may there be a close personal bond between the spouse and the parent-in-law, but there is a time when the spouse in bereavement becomes doubly dependent upon his or her mate. If the mother of one’s wife passes away, there can be no doubt that in most instances the wife will rely very heavily upon the personal aid and comfort that can be offered by her husband. A rule which recognizes only the loss of one’s ■ own kin, and makes no allowance for the death of a spouse’s parent unreasonably views the realities of our societal system. To say, as does the promulgated rule, that a dutiful and ambitious husband who seeks occupational advancement must make a choice between the opportunity for promotion and his feelings of loss and obligations to his spouse in a time of tragic crisis, in the opinion of this court, is arbitrary and capricious. Any rule which permits absence for Sabbath observance, or jury service, but differentiates between the funeral of one’s own parent and that of his spouse draws a line where it need not be drawn. Indeed, no provision is made even for a candidate to mourn or attend the funeral of his own brother. An appropriate regulation can be drawn granting exception for relationships which are close enough to insure against pretended grief.
The court is of the opinion that the rule under which the Civil Service Commission purported to deny re-examination to the petitioner is arbitrary and capricious and unnecessarily restrictive. The court notes that the Police Department, of which petitioner is a member, grants leave with bereavement pay for members of the department when there is a death not only of a spouse’s parent or child, but also of foster parents, stepparents, brothers and sisters, fathers-in-law, mothers-in-law and relatives residing in the household, which may include a beloved aunt or grandparent. (See chapter 2, rule 54.0 of the Police Department Rules and Procedures; New York City Patrolmen’s Guide Procedure, 120-31, effective October 1, 1972.) If petitioner were to be granted bereavement leave with pay by the Police Department for the death of his mother-in-law, he could reasonably assume that the Civil Service Commission would not deprive him of his opportunity to take a promotion examination.
The civil service rules should- be enlarged to permit of a more realistic view of what constitutes the members of one’s immediate family. The mother-in-law, much maligned, is certainly *244 entitled to inclusion within that rule. Accordingly, petitioner’s, application for leave to be permitted to take a second or special competitive examination for promotion to police sergeant, when scheduled, should be granted, and the cross motion to dismiss the petition is denied.