In the Matter of JOSEPH B. FRANCHINA, Appellant, v MICHAEL J. CODD, as Police Commissioner of the Police Department of the City of New York, et al., Respondents.

In the Matter of LEON MOORE, Appellant, v ALPHONSE D'AMBROSE, as City Personnel Director and as Chairman of the City Civil Service Commission, et al., Respondents.

In the Matter of VYTO J. ATKATSH, Respondent, v MICHAEL J. CODD, as Police Commissioner of the City of New York, et al., Appellants.

In the Matter of JAMES J. McCABE, Respondent, v MICHAEL J. CODD, as Police Commissioner of the City of New York, et al., Appellants.

First Department, May 19, 1977

*Sam Resnicoff* of counsel *(Sam Resnicoff* and *Murray A. Gordon, P. C.,* attorneys), for Joseph B. Franchina, appellant.

*Paul T. Rephen* of counsel *(L. Kevin Sheridan* with him on the brief; *W. Bernard Richland, Corporation Counsel),* for Michael J. Codd and others, respondents in first and second above-entitled proceedings.

*Sam Resnicoff* of counsel *(Murray A. Gordon* with him on the brief; *Murray A. Gordon, P. C.,* and *Sam Resnicoff,* attorneys), for Leon Moore, appellant.

*Paul T. Rephen* of counsel *(L. Kevin Sheridan* with him on the brief; *W. Bernard Richland, Corporation Counsel,* attorney), for Michael J. Codd and others, appellants in third and fourth above-entitled proceedings.

*Richard A. Dienst* of counsel *(Schofield, Dienst & Hartnett,* attorneys), for Vyto Atkatsh, respondent.

*Sam Resnicoff* of counsel *(Murray A. Gordon* with him on the brief; *Murray A. Gordon, P. C.,* and *Sam Resnicoff,* attorneys), for James J. McCabe, respondent.

MARKEWICH, J. Each of the four petitioners below—two appellants, two respondents here—resigned from the police department under honorable circumstances, with spotless records, for reasons having nothing whatever to do with their performance as officers. Following periods of separation from the department of about 10 months—9 in one case—each applied for reinstatement. In each instance, formal reinstate-

ment came about with seniority running from the date thereof, with the same rank, grade, and salary as before; the later dating of seniority without continuity from the original date of induction was to plague petitioners later on when the city fell into financial difficulties and policemen were laid off, with seniority being the key factor in the order of their going. The problem before us derives from the seniority date: had each petitioner's seniority run from the original date, none of them would have been discharged; by reason of the later date, each had his seniority truncated to the point where he was junior to others privileged to remain. Each has been aggrieved by the fiscally compelled discharge, and each has, therefore, commenced a proceeding pursuant to CPLR article 78 to compel the Police Commissioner, his department, the Department of Personnel, and the City Civil Service Commission to accord him continuity of service so as to give him seniority running from the date of original induction as patrolman. The statute and rules involved in reinstatement of resigned employees are correctly set forth in the dissent and require no repetition here. They must be read together as one. It is obvious that an employee reinstated by the commissioner's favor—a word used advisedly because reinstatement lies within his discretion—is entitled, if there is compliance with the expressed limitation of time in rule 6.2.1 of the City Civil Service Commission, to the benefit of section 80 of the Civil Service Law in respect of continuity of service as though there had never been a break in employment.

The facts, in addition to those stated above, which bear out the conclusion we reach of entitlement of petitioners to the relief sought, are few and simple. As has been said before, each applied for reinstatement in two to three months less than a year's time. It is stated in the dissent, and it is so, that each of the four applications was viewed with favor at the threshold and appropriate departmental proceedings initiated to formalize return of petitioners to the ranks; these consisted of physical examinations, as well as investigations of the activities of the petitioners during their months of separation from the department. The proceedings in respect to petition Atkatsh were terminated favorably two days before the anniversary of his resignation; administrative departmental procedure postponed actual reinstatement until the lapse of another month thereafter. Petitioner McCabe passed the physical examination a month after his application but the depart-

ment, which perhaps possesses the greatest expertise any-where in this field, took some six weeks to process his finger-prints; his recall to duty was postponed until some time after a year had elapsed after resignation. Petitioner Franchina's return to duty was postponed until two months after the year was up; the department was investigating his home activities for some weeks in Nassau County before discovering that his residence was in Suffolk! Petitioner Moore's anniversary date came and went without formal reinstatement taking place until more than three months thereafter, although he pointed out to the department that he had just been through as rigorous an investigation by the department itself in connec-tion with his application for a pistol permit. The two respon-dent petitioners were sustained below as to the relief sought; the two appellant petitioners were denied relief. All four are entitled to the relief sought.

It is to be emphasized that each of these men went through his physical examination with little delay and was then marked qualified for reinstatement. The commissioner did not have to do this; the petitioners were never rejected at this point—indeed, never rejected at all. A litany of cases is recited in the dissent, each standing for the proposition that the commissioner may reject without a reason. These are the same cases set forth in the department's briefs, and cited by the two Justices below who decided against two of the pe-titioners. With this rule petitioners have no quarrel, but it is not actually here involved. What is involved is the arbitrary and unreasonable conduct of the department in enmeshing petitioners in a Laocoon-like entanglement of police depart-ment green tape, which unreasonably delayed matters to the extent that each petitioner was thereby deprived of his right to section 80 continuity. Each investigation could easily have been completed within the time afforded, but it was not completed timely. Whether this was for lack of due diligence or insensitive disregard of petitioners' rights matters not. One of the Justices below observed in denying relief to a petitioner, that "petitioner cannot complain about the time it took to perform this voluntary act since he could not compel the act to be performed at all." This is just not so. The act was actually performed, but in such a manner and with such unreasonable delay in each case as to deprive each "benefici-ary" of its beneficial effect.

A public official undertaking to perform an act, even an act

which is completely discretionary, must do so reasonably and in complete good faith without such delay as would frustrate its ultimate objective. As the dissent concedes, "the discretion of the Police Commissioner * * * is not absolute in the sense that no limitation may be placed upon it." "Arbitrary action cannot elude judicial reach by the plea that it was no more than the use of proper administrative discretion. The moment it is shown to be arbitrary, it ceases to be discretionary". (Matter of Nathanson v Adams, 207 Misc 572, 576-577.) (See, also, Forkosch, Administrative Law, Scope of Judicial Review § 338[a].) We do not hold that the exercise of discretion evaporated the instant the commissioner made the threshold determination that each petitioner was acceptable for return to the department. He could have, as he did not, changed his mind at any time before the oath was administered. But, having embarked upon the course of examination and investigation after initial acceptance, it was the commissioner's duty to proceed with the despatch required in the circumstances. If he proceeded without regard to the approaching deadline, he was negligent; if with knowledge of the deadline and its possible impact upon the application he was dilatory, then he was unreasonable. (See Calzaretta v Mulrain, 131 NYS 2d 76, 80; Matter of Ormsby v Bell, 218 NY 212, 216.) "The power to review agency action necessarily implies the power to reverse, modify, or set aside aspects of such action which violate an applicable legal rule or principle of justice. Thus, unduly prolonged proceedings * * * [are] subject to judicial invalidation." (72 Yale LJ 574, 588-589, The Right to Relief from Unduly Protracted Proceedings.) Add to the discretion of the Police Commissioner that of the Civil Service Commission. In the circumstances found, the latter could not possibly have disagreed with the Police Commissioner's finding that petitioners were acceptable for service. Its part in the events was actually no more than performance of a ministerial act in consenting to reinstatement. To whatever unknown extent there may have been contributory delay by civil service, its delay would have also been unreasonable. Nor do we say that any delay at all would be unreasonable for each case of alleged unreasonable exercise of discretion must be measured ad hoc against its own peculiar set of circumstances. What we do say is that, in these four cases, the delay in processing the applications for reinstatement was unreasonable.

It is unrealistic to contend that, if petitioners were ag-

grieved at all, it was at the moment of delayed return to service with consequent losss of seniority. How aggrieved then? They had been restored in every respect except seniority date to the position theretofore occupied. Says our dissenter that "petitioners knew, or are deemed to have known, the effective dates of their reinstatement and that such dates were without the one-year period necessary to preserve continuity of service." This assumption is correct only in part; they knew the dates. But how could they possibly have known of the *effect* of these dates until the dread day that their livelihood was snatched from them? Not even the highest and most knowledgeable of city officials knew in 1972 and 1973 that, a few short years later, layoffs of experienced police officers would be required for economic reasons. The day of aggrievement in each case was the date of discharge, and all four cases are outside the bar of CPLR 217.

We hold all four petitioners entitled to reinstatement, but not without limitation as to back pay from discharge to restoration of duty. Each must suffer diminution of his award to the extent of mitigation by the amount of compensation earned in any other employment or occupation during that period. *(Matter of Ector v Salzmann,* 54 AD2d 1017.) There must also be considered the period between the dates of the orders here reviewed (two in the fall of 1975; two in the spring of 1976) and the calendaring of these appeals for the April 1977 Term. Should responsibility for this extraordinarily long delay be attributable to petitioners, it should be taken into account also by diminution of each award. The cases will therefore be remanded to Special Term, to hold a hearing to evaluate these factors and their impact on the amount of back pay, and then to enter a final judgment inclusive of that amount of back pay which may be due and owing to petitioners in each of the four cases.

Accordingly, the judgments of Supreme Court, New York County (HELMAN, J., and POSTEL, J.), entered respectively on March 4 and June 1, 1976, relating to petitioners- appellants Moore and Franchina, should be reversed, on the law and each such respective petition for reinstatement granted, and the matters remanded to Special Term, New York County, for a hearing to fix the amount of back pay owing to each petitioner-appellant in accordance with this opinion, for inclusion in the respective judgments to be entered in each proceeding; and the judgments of the same court (GELLINOFF, J.),

entered October 1 and 3, 1975, granting the petitions of petitioners-respondents Atkatsh and McCabe for reinstatement, should be modified, on the law, to the extent of remanding the matters to Special Term, New York County, for a hearing, consolidated with the hearing above ordered, to fix the amount of back pay owing to each petitioner-respondent in accordance with this opinion, for inclusion in the judgment to be entered in favor of each, and otherwise those judgments should be affirmed; all the foregoing to be without costs and without disbursements in each of the four cases.

LUPIANO, J. (dissenting). Each of these appeals presents an analogous factual situation and they are, therefore, consolidated for purposes of disposition. Petitioners are police officers who voluntarily terminated their service with the police department, under honorable circumstances, and within one year of the date of their respective resignations, each applied for reinstatement. Their applications for reinstatement were favorably acted upon and they were formally reinstated (reappointed) at a point in time in excess of one year since their respective resignations. Subsequently, the city fiscal crisis resulted in their being laid off because their seniority was computed as of the date of their formal reinstatement (reappointment) in contrast with the date of their original appointment.

In these article 78 proceedings, petitioners seek to annul respondents' action which suspended their employment as police officers and to be reinstated to the police department on the ground that their service should be computed as continuous from the time of their original appointments rather than from the date of their reinstatements (reappointments).[1] This apparently would afford the necessary seniority to protect them from the layoffs which occurred.

Subdivision 2 of section 80 of the Civil Service Law provides in pertinent part: "Except as otherwise provided herein, for the purposes of this section the original appointment of an incumbent shall mean the date of his first appointment on a permanent basis in the classified service followed by continu-

---

1. It is noted that petitioner McCabe, according to his brief on appeal, was reinstated as a police officer by stipulation between the parties dated November 5, 1975 while the appeal in his matter was pending. Respondents in their reply brief on appeal admit that both McCabe and Atkatsh were reinstated while their appeals were pending. However, the gravamen of the appeals, to wit, the issue of seniority, remains vital.

ous service in the classified service on a permanent basis up to the time of the abolition or reduction of the competitive class positions. *An employee who has resigned and who has been reinstated* or reappointed in the service *within one year thereafter* shall, for the purposes of this section, be deemed to have continuous service." (Emphasis supplied.) New York City Civil Service Rule 6.2.1 states in relevant part: "An employee who has completed his probationary term in a permanent position in the competitive * * * class, and who has resigned or retired therefrom *may be reinstated with the approval of the commission* to the position from which he has resigned or retired, if vacant, or to any similar vacant position * * * provided that his separation from employment was without fault or delinquency on his part and *provided,* further, *that the appointing officer to whom he has applied for such reinstatement is willing to reinstate him* * * * However, with respect to members of the uniformed forces of the police and fire departments * * * such reinstatement must be accomplished within a period of one year from the date of resignation or retirement." (Emphasis supplied.)[2]

In considering the effect of "reinstatement" after resignation, the Court of Appeals in *Matter of Doering v Hinrichs* (289 NY 29, 33) unequivocally declared: "A resignation constitutes a complete break in the service, and the absolute termination of relations. Thereafter the person resigning has no rights or duties. Reentry into the service can be accomplished only by the voluntary act of the person who has the power of appointment. The prior service may furnish sufficient ground for the legislative authorization of reentry into the service without a new examination;—the reentry marks, nonetheless, a new beginning and the renewed service cannot be traced further back in unbroken line. The renewed service is based upon a new appointment, though called reinstatement, and marks the date which determines right to priority in the order of suspension." Recently, in *Matter of Spurling v Police Dept. of City of N. Y.* (49 AD2d 823) this court considered whether the disapproval of an application for reinstatement made within the one-year period by a resigned police officer was

___

2. An argument that failure to reinstate within the one-year period set forth in the last sentence of City Civil Service Rule 6.2.1., renders the issue academic was rejected in *Matter of Winkle v Adams* (4 Misc 2d 441, 448) with the observation that "the one-year limitation applies only *to the time of the presentation of the petitioner's application,* and not to his actual reinstatement" (emphasis supplied).

arbitrary or capricious. "[N]oting * * * that the appointing officer is vested with discretion to approve or disapprove an application for reinstatement" and citing the language of *Matter of Doering v Hinrichs (supra)* set forth above, we concluded that the police commissioner "acted within the scope of his discretionary power and is not required to state a reason for the action taken" *(Matter of Spurling v Police Dept. of City of N. Y., supra).*

The Justices at Special Term rendered conflicting determinations in these article 78 proceedings. The petitions of Franchina and Moore were dismissed on the ground that as reinstatement is purely discretionary, no right was afforded these petitioners to compel reinstatement when they resigned. However, as to Atkatsh and McCabe, Special Term concluded that these petitioners were entitled to, i.e., they possessed a right to have their applications for reinstatement (made after they resigned) acted upon within a reasonable time. In view of the legal authority and precedent above delineated, I conclude that petitioners did not have such right or privilege. Of course, the discretion of the Police Commissioner and of the City Civil Service Commission is not absolute in the sense that no limitation may be placed upon it. Circumstances may arise where that discretion is exercised in a patently arbitrary and capricious manner violative of an applicant's constitutional rights. For example, assume that the Police Commissioner determined to delay the forwarding to the Civil Service Commission applications for reinstatement which he approved for the avowed purpose of depriving those applicants with dark brown hair of benefiting from continuous service, whereas the applications of those without dark brown hair were expeditiously forwarded for commission approval. Clearly, such a policy "would not be deemed beyond the pale of judicial review so as to require at least an appropriate and reasonable justification for such a policy" *(Matter of Winkle v Adams,* 4 Misc 2d 441,448).

The critical factor which gives rise to proper judicial intrusion into the administrative action as set forth in the supposition above is that the applicants therein could demonstrate a violation of their rights in that their applications were not treated in a fair and impartial manner as were all other applications and that they were in effect discriminated against. However, in the instant proceedings, the petitioners have made no such similar demonstration and bottom their

plaint on the invocation of an abstract right or privilege to have their applications processed promptly. To reiterate, they have no such right or privilege in the abstract. It is the surrounding circumstances *when demonstrated and viewed in totality* which may give rise to the privilege to have the applications processed promptly and within a reasonable time. As no demonstration of circumstances has been presented which would justify judicial intrusion into the discretion which inheres in the Police Commissioner and the Civil Service Commission in the processing of the petitioners' applications, they are not entitled to the relief requested.

Parenthetically, it is noted that petitioner Atkatsh resigned on June 23, 1972 and that his application for reinstatement was approved by the Police Commissioner on June 21, 1973 within the one-year period. By letter dated June 27, 1973, petitioner was requested to complete "necessary papers for (his) reinstatement." By letter dated June 29, 1973, directed to the Bureau of Administrative Service, Department of Personnel, the bureau was informed by the Police Department that petitioner's application for reinstatement was approved by the Police Commissioner and that he would be reinstated effective July 20, 1973, *subject to the approval* of the Department of Personnel. Petitioner was reinstated as a police officer, effective July 20, 1973. The approval of the City Civil Service Commission as set forth in rule 6.2.1 is clearly not a ministerial act, but a requisite exercise in discretion necessary to obtaining reinstatement. The approval of the Police Commissioner is necessary for the exercise of approval on the part of the Civil Service Commission, but without the latter's approval the former's desire to reinstate the applicant is unavailing.

Finally, a grave issue is presented as to whether petitioners can now complain of their loss of seniority as a consequence of the interruption in service occasioned by their voluntary resignations from service. The petitioners resigned and were formally reinstated as follows: Franchina—June 20, 1972 and August 20, 1973; Moore—March 24, 1971 and May 8, 1972; Atkatsh—June 23, 1972 and July 20, 1973; McCabe—October 4, 1970 and January 3, 1972. They commenced their respective article 78 proceedings as follows: Franchina—on or about September 25, 1975; Moore—on or about August 26, 1975; Atkatsh—on or about July 31, 1975; McCabe—on or about July 25, 1975. Concededly, these proceedings seeking review of

petitioners' suspension from service because of the city's fiscal crisis are not time-barred since they were brought within four months of their removal from service. However, may they collaterally attack their losses of continuity of service which occurred in 1972 and 1973? Petitioners' rights concerning continuity of service were fixed at the time of their reinstatement (reappointment) in those years. The applicable statute and rule set forth above were substantially the same then as now. Petitioners are deemed to know or should have known that they were aggrieved respecting loss of seniority at the time of their reinstatements in that the Police Department allegedly unreasonably delayed reinstatements by failing to expeditiously process the applications. They did not seek redress at that time and now, years later, seek rectification of this alleged administrative wrong. This, they cannot do. To permit such open-ended review of administrative conduct would render the protection of CPLR 217 illusory. Clearly, petitioners knew, or are deemed to have known, the effective dates of their reinstatement and that such dates were without the one-year period necessary to preserve continuity of service. They could have, as of the effective dates of their reinstatement after resignation, sought review of the administrative action which affected their seniority by raising the same argument they attempt to assert now, to wit, that they possess a right or privilege to prompt processing of their applications for reinstatement made within the one-year period after resignation. Petitioners voluntarily resigned and terminated their employment. Seniority and related issues were necessarily affected thereby. Having acted favorably by reinstating petitioners after their resignations, respondent Police Commissioner is now, years later, in effect accused of violating their rights respecting seniority which resulted in their subsequent recent severance from service due to the city's fiscal crisis. To state the obvious, petitioners have failed to demonstrate that they have been "wronged."

Accordingly, the judgment of the Supreme Court, New York County (POSTEL, J.), entered June 1, 1976, and the judgment of said court (HELMAN, J.), entered March 4, 1976, which respectively dismissed the article 78 petitions of Franchina and Moore, should be affirmed, without costs and disbursements. The judgments of the Supreme Court, New York County (GELLINOFF, J.), entered October 1, 1975 and October 3, 1975 which respectively granted the article 78 applications of At-

katsh and McCabe, should be reversed, on the law, without costs and disbursements, the applications should be denied and the petitions dismissed.

KUPFERMAN, J. P., and SILVERMAN, J., concur with MARKE-WICH, J.; LUPIANO, J., dissents in opinion.

Judgments, Supreme Court, New York County, entered on March 4, 1976 and June 1, 1976, reversed, on the law, and vacated, without costs and without disbursements, and the matter remanded to Special Term, New York County, for a consolidated hearing as directed in the opinion filed herein to fix the amount of back pay owing to appellants in accordance with said opinion, for inclusion in the judgment to be entered in this proceeding.

Judgments, Supreme Court, New York County, entered on October 1, 1975 and October 3, 1975, modified, on the law, to the extent of remanding the matter to Special Term, New York County, for a consolidated hearing as directed in the opinion filed herein to fix the amount of back pay owing to petitioners-respondents in accordance with said opinion, for inclusion in the judgment to be entered in favor of petitioners-respondents, and otherwise affirmed, without costs and without disbursements.