OPINION OF THE COURT
Norman C. Ryp, J.
A. ISSUES
“When” is it reasonable to schedule a make-up city civil service examination? “Now” or “whenever” at the unscheduled (since Oct. 31, 1981) “next regular examination” entitled Lieu *947 tenant, F.D.? Is money or “time of the essence” under Administrative Code of the City of New York § 487a-7.1, mandating full pay or compensation during absence from duty caused by injury to a fire fighter? Courage v. career!
In this CPLR article 78 proceeding, petitioner, a first grade fire fighter, seeks a judgment reversing and annulling the determination of respondent, the Civil Service Commission of the City of New York (NYC-CSC), which affirmed the prior decisions of respondent, Juan U. Ortiz, as City Personnel Director (Director), Department of Personnel of the City of New York (NYC-DOP), and directing the immediate scheduling of a special or second (make-up) examination No. 0511 for petitioner (plus 70 other eligible fire fighter candidates represented by the Uniformed Firefighter Association [UFA]) for promotion to the title or position of “Lieutenant, Fire Department” (Lt-FD).
NYC-CSC is a municipal agency, empowered, but not limited, under the New York City Charter, chapter 35, § 812 (c) (Department of Personnel), to hear and determine appeals by any person aggrieved, including petitioner, by NYC-DOP’s action. Director, NYC-DOP, heads the NYC-DOP and is granted additional powers and duties, including “[T]o schedule and conduct examinations for positions in the civil service” (New York City Charter, ch 35, § 813 [a] [3]), e.g., examination No. 0511 for promotion to Lt-FD.
B. FACTS AND PROCEDURAL HISTORY
The following facts and procedural history appear uncontroverted. Petitioner was an eligible candidate for promotion to the position Lt-FD. The last regularly scheduled civil service examination No. 0511 for this position was held on October 31, 1981, when petitioner was on line-of-duty medical leave for a physical disability incurred during the course and within the scope of his municipal employment as a fire fighter. Thus, petitioner was an eligible candidate for a make-up examination under NYC-DOP’s rule IV § 4.4.5 (c).
Thereafter, on November 27,1981, petitioner duly requested a make-up examination No. 0511, which was granted by NYC-DOP on May 14, 1982. During May and June 1982, petitioner and other eligible testees for make-up examination No. 0511 took the examination’s oral segment for which an eligible list was established in August 1982. On July 8, 1982, NYC-DOP advised petitioner that the written segment of this make-up examination would be given simultaneously with the next, though then unscheduled, regular examination No. 0511. Eight months later, on March 9,1983, UFA’s 1983 president, Nicholas *948 Mancuso, requested that make-up examination No. 0511 be scheduled “as soon as possible,” before the next regularly scheduled examination. NYC-DOP Director (Juan U. Ortiz) replied, on March 30, 1983, that though “unfortunate”, NYC-DOP is “unable to change the current policy”, because of “staffing, workload and financial difficulties.” On January 18, 1984, UFA’s 1984 president, James F. Boyle, insisted that NYC-DOP is legally and equitably required, in logic and justice, to schedule, within 10 days, an immediate make-up test before the next regularly scheduled examination No. 0511 for, according to the UFA, 70 eligible candidates, including petitioner, or face legal action. On February 7, 1984, NYC-DOP answered but declined to grant such request due to “limitations of staff, budgeted funds and workload”.
After NYC-DOP Director’s denials of March 30, 1983 and February 7, 1984, petitioner’s UFA’s counsel on February 21, 1984 forwarded an appeal letter, which was received by NYC-CSC on February 24,1984. Subsequently, on September 5,1984, NYC-CSC affirmed NYC-DOP’s March 30, 1983 and February 7,1984 determinations under New York City Charter § 812 (c).
Thereafter, on October 25, 1984, petitioner commenced this CPLR article 78 proceeding, which was finally submitted and referred to, and then conferenced and argued before this court on January 14 and 25, 1985.
c. parties’ contentions
In support, both in his verified petition and reply, petitioner submits that NYC-DOP has wholly misconstrued its rule IV § 4.4.5 (c). This misinterpretation is contrary to accepted principles of statutory construction (i.e., McKinney’s Cons Laws of NY, Book 1, Statutes §§ 94, 95, 96) so as to confer an illusory right (citing Sharkey v Thurston, 268 NY 123, 127 [1935]), and render the statutory benefit nugatory (Administrative Code § 487a-7.1; Matter of Greenman v Levitt, 93 Misc 2d 310 [Sup Ct, Albany County 1978]). Moreover, petitioner contends a statute must be construed as reasonable and must not constitute a hardship or injustice (see, Matter of Jeter v Ellenville Cent. School Dist., 81 Misc 2d 511 [Sup Ct, Ulster County 1975], mod 50 AD2d 366 [3d Dept 1976], affd 41 NY2d 283 [1977]). Petitioner further distinguishes Matter of Lafferty (Ortiz) (NYLJ, Nov. 12, 1982, p 13, col 1 [Sup Ct, Spec Term, NY County, Schwartz, J.), as factually inapplicable since, contrary to this case, a make-up test date certain therein (three months later) was already scheduled, and that case was decided during a municipal fiscal crisis, not the current budgetary surplus.
*949 In particular, petitioner argues that NYC-DOP’s construction is harsh and unjust since it deprived, by delay of several (Oct. 31, 1981-1985) years, petitioner and 70 other fire fighters of salary, pension and promotional benefits, contrary to Administrative Code § 487a-7.1, which requires full pay or compensation during duty absence caused by injury or sickness. Petitioner notes that, under the applicable collective bargaining agreements the pay differential between a first grade fire fighter with 20 years’ service, as petitioner, and lieutenant first step (lowest rank) was $5,411 ($31,212-$25,801) as of July 1, 1982, and $5,676 ($33,709-$28,033) as of July 1, 1983. Administrative Code § 487a-7.1, petitioner urges, is based upon sound public policy encouraging fire fighters, by full benefit protection, to take normal risks in a high-risk job (similar to police officers) even when a competitive promotional civil service examination (i.e., No. 0511) is imminent.
Finally, petitioner submits, this public policy (which overrides an alleged but unsubstantiated $20,000 make-up test cost claim), and sound statutory construction tenets were violated by NYC-DOP’s arbitrary, capricious, unjust and unreasonable determinations, affirmed by NYC-CSC; such determinations should be reversed, annulled and rectified by this court scheduling an immediate make-up examination, No. 0511.
In opposition, respondents, NYC-CSC and NYC-DOP, submit that: petitioner’s entitlement to and eligibility for a make-up examination strictly arises from NYC-DOP rule IV § 4.4.5 (c), with no constitutional or statutory requirement that an absentee from a civil service test, because of injury or illness, be given a make-up examination. In addition, respondents contend: NYC-DOP is empowered, under New York City Charter § 813 (a) (3), to schedule and conduct civil service examinations; NYC-DOP policy, covering make-up tests for all titles, including fire fighter, is to give same simultaneously with all or part of the next regularly scheduled examination, with or without additional separate questions; this NYC-DOP policy is based upon sound reasons of administrative economy (claiming a cost of $20,000 in wages and staff time plus preparation and conduct for each separate make-up test), efficiency (by not delaying promotion and appointment of others), is long standing, and consistent with its rule IV § 4.4.5, noting approved make-up tests for 75 different titles, totaling 1,094 in 1983 and 364 in 1984. Respondents point out this policy is consistently sustained by the courts citing Matter of Lafferty (Ortiz) (supra) and Mathis v City of New York (NYLJ, Aug. 21, 1984, p 6, col 2 [Sup Ct, Spec Term, NY County, Evans, J.]).
*950 Moreover, respondents contend that the agency charged with administering its rule or regulation (i.e., NYC-DOP’s rule 4.4.5) is entitled to controlling weight in determining its meaning, under well-settled construction principles, and will be upheld, if not irrational or unreasonable, citing Matter of Johnson v Joy (48 NY2d 689 [1979]) and Matter of Howard v Wyman (28 NY2d 434 [1971]). Respondent further notes that NYC-DOP rule 4.4.5 does not require or confer, nor do testee/candidates enjoy any right or privilege of any time limit to be given a special or makeup test, which being within the NYC-DOP’s discretion to best administer its own rules, citing Matter of Franchina v Codd (57 AD2d 394 [1st Dept 1977]). Respondents further contend the above NYC-DOP policy is reasonable, proper and lawful (see, Matter of Lafferty [Ortiz], supra; Mathis v City of New York, supra). Finally, respondents argue not only is there no prejudice, there is substantial benefit to any candidate, who can take both the special or make-up, and regular examination, so as to gain retroactive seniority and appointment upon passage of either examination. Therefore, respondents submit subject CPLR article 78 petition should be dismissed.
D. APPLICABLE STATUTES, ORDINANCES,
RULES AND/OR REGULATIONS
1. New York City Charter — Chapter 35 — Department of Personnel
(a) New York City Charter § 812. City Civil Service Commission.
“c. The civil service commission shall have the power to hear and determine appeals by any person aggrieved by any * * * determination of the personnel director made pursuant to paragraphs three * * * of section eight hundred thirteen of this chapter and may affirm, modify or reverse such * * * determination” (originally § 812, amended by Local Laws, 1963, No. 8 of City of New York, eff Feb. 2, 1963, general election of Nov. 4, 1975).
(b) New York City Charter § 813. Personnel Director; powers and duties.
“a. The personnel director shall have the following powers and duties in addition to the powers and duties of a municipal civil service commission provided in the civil service law, and those vested in him as the head of the department * * *
“(3) To schedule and conduct examinations for positions in the civil service” (originally §§ 813, 814, amended by L 1954, ch 352, eff Jan. 1954; L 1962, ch 998, § 36, general election of Nov. 4, 1975).
*951 2. New York City Department of Personnel — Rules and Regulations Section IV — Administration and Rating of Examinations
Section 4.4.5 Second or special examinations.
“[n]o candidate shall be given a second or special competitive test in connection with an examination held, unless it be shown to the satisfaction of the city personnel director or the head of the examining agency that the candidate’s failure to take or complete such test was due to * * *
“(c) physical disability incurred during the course of and within the scope of the municipal employment of such candidate where * * * an officer or employee of the city.”
3. Administrative Code of City of New York — Chapter 19 — Fire Department
Section 487a-7.1. Salary during absence from duty caused by injury or sickness. “Each member of the uniformed force shall be paid full pay or compensation during absence from duty caused by injury or sickness, except as otherwise provided by law” (Local Laws, 1940, No. 5 of City of New York, eff Feb. 13, 1940).
E. APPLICABLE LAW AND FINDINGS
NY Constitution, article V, § 6 (adopted Nov. 8, 1949, amended Nov. 3, 1964, eff Jan. 1,1965) authorized civil service appointments and promotions by competitive examination in this State and all cities herein (see also, Civil Service Law, art 4, tit A, §§ 50-59 [recruitment of personnel; examinations and eligible lists], with § 50 covering civil service examinations by the New York State Civil Service Commission generally including subds [8], [9] [L 1981, ch 980, § 2, eff July 31, 1981]).
Under New York City Charter chapter 35, Department of Personnel, the New York City Department of Personnel, headed by its Director, is given all necessary powers, duties and responsibilities for personnel management to administer all municipal agencies effectively and to supervise, evaluate, motivate, discipline, provide incentive for and improve the skills of all its employees. The personnel policies, under the New York City Charter, New York State Civil Service Law article 2, and rules promulgated thereunder shall: preserve and promote merit and fitness in New York City government; ensure that appointments and promotions are made without regard to sex, race, religion or political affiliation; and promote the efficient and effective delivery of services to the public (New York City Charter § 810 [declaration of intent], added at general election of Nov. 4, 1975). To implement the above goals the New York City Civil *952 Service Commission was created thereunder and empowered, inter alla, to hear and determine appeals by any aggrieved person of any determination made by the Personnel Director (New York City Charter § 812 [c]), under his or her various powers and duties, which include “[t]o schedule and conduct examinations for positions in the civil service.” (New York City Charter § 813 [a] [3], which covers promotion to the title, grade, or rank of lieutenant in the New York City Fire Department.) This includes the scheduling of make-up examinations (see, Civil Service Law § 50 [8], as added by L 1966, ch 870, § 1, eff July 29,1966). Whether such actions are arbitrary, capricious or unreasonable, or are executed in good faith is subject to judicial review under CPLR article 78. (See, Matter of Minerva v Ward, 101 AD2d 754 [1st Dept 1984], affd 63 NY2d 739 [1984]; Matter of Pell v Board of Educ., 34 NY2d 222 [1974]; Matter of Franchina v Codd, 57 AD2d 394 [1st Dept 1977], revd on other grounds 46 NY2d 816 [1978]; Matter of Harchack v Bronstein, 78 Misc 2d 240 [Sup Ct, NY County 1974], mod 47 AD2d 726 [1st Dept 1975]; Matter of Forde v Adams, 207 Misc 577 [Sup Ct, Spec Term, NY County 1955].)
Moreover, it is a well-settled principle of administrative law that courts defer to the construction given to applicable statutes and its own regulations by that agency responsible for its sound and practical administration. Such will be sustained unless irrational or unreasonable. (Matter of Consolidated Mut. Ins. Co., 60 NY2d 1, 8 [1983]; Matter of 324 Liq. Corp. v McLaughlin, 102 AD2d 607, 610 [1st Dept 1984].) This principle has been previously applied by the courts to permit the New York City Fire Commissioner: to direct 144 hours of overtime during World War II (Jan.-Apr. 1944) without extra compensation for firemen, first grade, beyond the then minimum $3,000 annual salary, under Administrative Code § 478a-8.0 (Crane v City of New York, 185 Misc 456 [Sup Ct, NY County 1945], unanimously affd without opn 270 App Div 930 [1st Dept 1946], affd 296 NY 717 [1946]); and within budgetary modification powers to restore 72 old and create 34 new lieutenant positions and appoint same from an expiring (15 hours later) eligible list of successful competitive civil service examinees without prior approval of the Board of Estimate under New York City Charter § 124 (a) (see, Matter of Love v Bronstein, 43 AD2d 426 [1st Dept 1974]); but not to impose a two concurrent platoon system in violation of Administrative Code § 487a-11.0 (Matter of McCormack v Lowery, 39 NY2d 1024 [1976]). (See also, Matter of Rooney v New York State Dept. of Civ. Serv., 124 Misc 2d 866 *953 [Sup Ct, Westchester County 1984], upholding a Yonkers Municipal Civil Service Commission determination denying fire fighters, civil service examinees for promotion to lieutenant, the right to review test questions or seek revision of the answer key.)
Thus, the rule of reason prevails within sound and practical municipal agency administration.
The New York City Fire Department (NYC-FD) last established under New York City Charter § 481 (ch 19-Fire Department) has the primary mission of extinguishment of fires (New York City Charter § 487 [b], originally § 487, as amended by Local Laws, 1959, No. 24 of City of New York), plus the necessary and incidental protection of life and property. NYC-FD’s various bureaus and divisions include fire prevention with duties and powers in relation to: dangers to life or property, combustibles, chemicals, explosives, flammables, or other dangerous substances, articles, compounds or mixtures; protection against fire and panic, obstruction of aisles, passageways and exits, fire protection and fire extinguishing appliances and fire prevention in licensed places of assembly (Administrative Code § 487a-1.0 [1] [a], as amended by Local Laws 1957, No. 5 of City of New York, eff Feb. 8, 1957). The high danger and risk of injury or sickness from flame or smoke resulting from fighting and extinguishing fires appears to be the policy basis placing fire fighters (as well as police officers who risk danger from gunfire and personal ire) beyond the limits of workers’ compensation benefits (Matter of Krug v City of New York, 196 App Div 226, 229 [3d Dept 1921]), and mandating by statute, for the past 45 years, full pay or compensation during absence from duty caused by injury or sickness (Administrative Code § 487a-7.1). In addition to seniority and superior capacity established by competitive civil service examination (NY Const, art V, § 6; Civil Service Law, art 4, §§ 50,52 [1] [L1958, ch 790, § 1]; Matter of Selover v Civil Serv. Commn., 61 Misc 2d 688 [Sup Ct, Erie County 1970]), individual acts of personal bravery may be rated as an element of meritorious service, to be fixed by the New York City Civil Service Commission upon transmission of each candidate’s complete personnel record, for promotion by the New York City Fire Commissioner. (See, Administrative Code § 487a-9.0 [promotions], as amended by L 1963, ch 100, § 407, eff Mar. 19,1963.) Thus, courage and career appear not competitors but partners-in-law.
Petitioners (fair and reasonable interpretation of his statutory [Administrative Code § 487a-7.1] right to full pay and compen *954 sation during duty absence from injury or sickness) and respondents (reasonable application, with retroactive seniority, of its regulation does not require an immediate make-up test, contrary to sound administrative efficiency, economy and discretion) in their respective perspectives are, in the traditional clerical tale, “both right!”
Certainly this court recognizes the well-settled principle of administrative law, that construction given to NYC-DOP’s regulation 4.4.5 (c) by NYC-DOP’s Director which should be sustained unless irrational or unreasonable. (Matter of Consolidated Mut. Ins. Co., supra; Matter of Johnson v Joy, 48 NY2d 689, 691 [1979], supra.) Nor does this court or any court presume to be the NYC-DOP Director substituting its judgment for that of the administrative agency in the scheduling and conduct of civil service examinations (New York City Charter § 813 [a] [3]), unless arbitrary, unreasonable and an abuse of discretion (Matter of Pell v Board of Educ., 32 NY2d, at p 232).
However, the twilight zone of rationality and reason is reached where such construction and judgment conflict with, if not contrary to (Matter of McCormack v Lowery, supra), another statutory provision (Administrative Code § 487a-7.1) granting a fire fighter’s right to full pay and compensation during duty absence from injury or sickness. This court is not presented with the opposing horns of a dilemma as much as with a rubic cube of fitting together apparent differing statutory provisions where reasonably and equitably feasible. This impels the court to return to and apply basic statutory construction principles, including plain language (McKinney’s Cons Laws of NY, Book 1, Statutes § 76; see, Matter of Empire Mut. Ins. Co. [Barone], 85 AD2d 201, 203 [1st Dept 1982], revd on other grounds 57 NY2d 833 [1982]), legislative intent from natural and obvious meaning of words (McKinney’s Cons Laws of NY, Book 1, Statutes § 94; Patrolmen’s Benevolent Assn. v City of New York, 41 NY2d 205, 208 [1976]), and underlying general purpose and spirit (McKinney’s Cons Laws of NY, Book 1, Statutes § 96; Matter of Allstate Ins. Co. v Shaw, 52 NY2d 818 [1980]).
NYC-DOP is plainly chartered to promote merit and fitness in New York City government, plus efficient and effective delivery of services to the public (New York City Charter § 810 [a]), as well as to schedule and conduct civil service examinations (New York City Charter §813 [a] [3]). The New York City Fire Department is clearly mandated to prevent and extinguish fires and to provide the necessary and incidental protection of life and property (New York City Charter § 487 [b]; Administrative Code *955 § 487-1.0 [1] [a]). Recognizing fire fighting’s high danger and risk, within the statutory general purpose and intent, fire fighters are not to be penalized, fiscally or career wise, for duty injuries or sicknesses (Administrative Code § 487a-7.1, as reflected in above NYC-DOP rule 4.4.5 [c] covering a make-up examination).
Thus, it was for the NYC-DOP, within its reasonable management and administrative discretionary authority, to determine whether and when to schedule and conduct original and makeup civil service examinations, including No. 0511 for Lt-FD. The Director, NYC-DOP, after scheduling an original test No. 0511 on October 31, 1981, further properly scheduled the initial or oral portion for make-up examination No. 0511 during May and June 1982, for which an eligible list was established in August 1982. However, for two and one-half years, for variously claimed but unverified reasons, identically cited in Mathis v City of New York (supra) (staff, test integrity, budgetary cost, workload), NYC-DOP declined to schedule and conduct the final or written segment of make-up examination No. 0511. This refusal, despite written requests for an immediate make-up test from petitioner and apparently 70 other eligible candidates, continued for almost four and one-half years and to date, except to agree to a make-up test together with the next, though still unscheduled examination No. 0511, with retroactive seniority but not pay provided upon passage thereof. NYC-DOP does not indicate any change in the current status of its refusal reasons, including the administrative savings but retroactive seniority although not retroactive pay.
This court takes judicial notice that the NYC-DOP and FD are both departmental arms headed by New York City government under the New York City Charter and its Administrative Code. Mutual cooperation and coordination, not the bureaucratic principle of perpetual pendency, should be the operative watchword. Otherwise a fire fighter may be forced to choose between courage and career, with valor cautiously vacillating on the altar of ambition, effectively negating the mission of the Fire Department. It is noted that special or make-up examinations required under NYC-DOP-4.4.6 for religious observers must, pursuant to Civil Service Law § 50 (8), be scheduled at a “reasonably comparable time and place without additional fee or penalty.” To do unreasonably less for the duty disabled would not only deny by delay justice to a demoralized fire fighter, but possibly endanger the life and limb of a potential rescuee.
At a January 25, 1985 motional argument and conference herein, respondents’ counsel indicated that the next regularly *956 scheduled examination No. 0511 will be given during October 1985 but has declined, as not authorized, to commit respondent to stipulate to a specific date for that or an earlier make-up examination No. 0511. Respondent’s counsel indicated that make-up examination No. 0511 was possible if not probable during June 1985, if NYC-DOP’s civil service examination consultants filed a proposed examination no later than April 1985, because of necessary NYC-DOP approval and processing procedures, and civil service statutory prior notice requirements.
In the recent past (1983) NYC-DOP has executed at least one stipulation of settlement in this court to schedule a filing and a civil service make-up examination date (principal park supervisor). (Matter of Locascio v City of New York, Sup Ct, Spec Term, NY County, index No. 13451/1983.) It would appear that the reasonable time, after almost four and one-half years and 70 eligible candidates, has come to schedule and conduct a make-up examination, either separately from or simultaneously with the next regularly scheduled examination No. 0511 (Oct. 1985) but with retroactive seniority to October 31, 1981, and pay to August 1982 (original make-up eligible list) in the event of test passage, consistent with Administrative Code §487-7.1. Any further delay would be a denial beyond the boundary of rationality and reasonability. (See, Matter of Minerva v Ward, 101 AD2d 754, supra.)
F. CONCLUSION
Thus, in the event respondents shall continue to fail or refuse to stipulate to schedule and conduct a special or make-up examination No. 0511 for Lt-FD no later than June 30, 1985, this court, within its reasonable and equitable powers shall have no alternative except to direct same within the order/judgment to be settled herein.
Accordingly, by reason of the foregoing, the petition is granted only to the extent set forth hereinabove, otherwise denied.